292 So.2d 204 (1974)
STATE of Louisiana
v.
Lee Edward ROQUEMORE.
No. 54077.
Supreme Court of Louisiana.
March 25, 1974.
*205 James Sharp, Jr., Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., John R. Harrison, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Lee Edward Roquemore was charged by bill of information with armed robbery. R.S. 14:64. He was convicted after trial by jury and sentenced to serve fifteen years at hard labor. Defendant appeals his conviction and sentence, relying on five perfected bills of exceptions for reversal thereof.
Bill of Exceptions No. 1 was reserved when the trial judge sustained the State's objection to certain questions propounded by defense counsel on voir dire examination. After affirming that he had served on a jury in a criminal case on the previous day, the prospective juror was asked the following questions: "Now what was the charge in your case?" and "Was the defendant in your case found guilty or not guilty?"
It is argued by defendant that the purpose of the aforesaid inquiry was to determine the juror's mental and physicial capacity to serve as a juror in this case and further to ascertain if he had a fixed mind with respect to criminal cases. Defendant contends that he was entitled to examine this juror in this connection so that he could properly exercise a peremptory challenge. He relies upon State v. Hills, 241 La. 345, 129 So.2d 12 (1961). Defendant admits in brief that the prospective juror to whom the above questions were directed was excused and, at this point, no damage was done. However, counsel argues that he refrained from similar questions to other prospective jurors in view of the ruling of the trial judge. It is claimed that this resulted in prejudice to the defendant.
Article 786 of the Code of Criminal Procedure provides:
"The court, the state, and the defendant shall have the right to examine prospective jurors. The scope of the examination shall be within the discretion of the court. A prospective juror, before being examined, shall be sworn to answer truthfully questions asked him relative to his qualifications to serve as a juror in the case."
The purpose of voir dire examination is to determine the qualifications of the prospective juror to serve in the case.
*206 Article 786 C.Cr.P. In order to accomplish this purpose, the scope of inquiry should be broad enough to permit parties to question jurors not only for the purpose of showing grounds for a challenge for cause, but also, within reasonable limits, to elicit such facts as will enable them to intelligently and wisely exercise their right of peremptory challenge.
This Court, in two previous decisions, squarely passed upon the particular issue presented in this bill and held this type of examination to be irrelevant as to the ascertainment of the juror's qualifications to serve in the case. State v. Martin, 250 La. 705, 198 So.2d 897 (1967); State v. Spencer, 257 La. 672, 243 So.2d 793 (1971).
In State v. Martin, we ruled that, under Article 357 of the former Code of Criminal Procedure (R.S. 15:357), the purpose of examination of the jurors is to ascertain the qualification of the juror in the trial of that particular case and examination should be limited to this purpose. The question propounded to the prospective juror in Martin concerned the verdict returned by the jury in the last criminal case in which the said juror had served. The trial court had sustained the objection of the State to this question. In finding no substance to the bill, we stated:
"Obviously, the question propounded by defense counsel, as to a verdict rendered in another criminal proceeding on which the prospective juror had served, was irrelevant to the ascertainment of the juror's qualifications to serve in the case at bar. See State v. Swain, 180 La. 20, 156 So. 162; State v. Odom, 247 La. 62, 169 So.2d 909 and authorities there cited, and State v. Oliver, 247 La. 729, 174 So. 2d 509."
Again, in State v. Spencer, we affirmed the ruling of the trial judge in his refusal to permit defense counsel to question a prospective juror on voir dire examination regarding the verdict reached in a prior trial in which he had served as a juror. This Court therein stated:
"The judge correctly ruled that this was not proper voir dire examination. C.Cr. P. Art. 786; State v. Martin, 250 La. 705, 198 So.2d 897. In any event, the accused has no ground for complaint under either bill since he did not exhaust his peremptory challenges. C.Cr.P. Arts. 800, 799."
Defense counsel concedes that the holdings in these cases are directly in point, but argues that this Court should consider the correctness of the ruling of the trial judge in connection with this Court's pronouncement in State v. Hills, supra.
Hills involved the alleged rape of a white woman by a black man. The questions asked by defense counsel to six prospective jurors on voir dire examination were: "Are any of you in sympathy with any integration or segregation organizations?" and "Do any of you gentlemen belong to any religious or segregation groups?" On rehearing, this Court held that curtailment of such interrogation on voir dire examination was improper. We agree with this holding. The Court properly held that, while inquiry as to membership in a group or organization advocating segregation of the races does not necessarily disqualify one for service as a juror, it might well be regarded as a basis upon which defendant might wish to exercise a peremptory challenge. However, the Hills case is clearly distinguishable from the instant case. The questions asked herein by defense counsel as to the charge and verdict rendered in another criminal case on which the prospective juror had served were irrelevant to the determination of the juror's qualification to serve on the case at bar. Accordingly, we conclude that the trial judge correctly sustained the objection of the State.
This bill has no merit.
Bill of Exceptions No. 2 was reserved to the ruling of the trial judge allowing the introduction of evidence pertaining to the armed robbery of Hadley Street Esso Service Station in this prosecution for the *207 armed robbery of the Stop and Go Grocery. Approximately one month prior to trial, the State notified defendant by letter that it intended to offer evidence of his service station robbery, for which defendant was also charged in another bill of information, as part of a common system under the statutory exceptions set forth in R.S. 15:445 and 446. The notification was given in compliance with the guidelines set out by this Court in State v. Prieur, 277 So.2d 126 (La.1973).
Finding that the armed robberies were practically duplicates of each other, the trial judge permitted introduction of the evidence pertaining to the service station robbery as part of a common system.
The crime charged in the instant case occurred at approximately 1:50 a. m. on October 11, 1972. Defendant, Lee Edward Roquemore, and Sam Underwood entered the Stop and Go Grocery located at the corner of Burg Jones Lane and Standifer Street in Monroe, Louisiana. Roquemore was armed with a large knife, known as a "bowie" knife, and Underwood was armed with a shotgun. Three persons were in the grocery at the time of the robbery, Walter Jackson, the employee who was the victim named in the bill of information, John Marbles, another employee, and Ervin Turner, a customer. All three of these witnesses gave consistent testimony concerning the method of operation used in the robbery and the description of the perpetrators of the crime. They testified that the robbery was committed by two black males, one taller than the other, wearing dark short-sleeved shirts and stocking caps over their faces. One was wearing dark pants and the other light pants. One of the robbers, later identified as the defendant, Roquemore, was armed with a large "bowie" knife and the other with a single barrel shotgun. During the course of the robbery, the employee and the customer were ordered to line up against a wall, and Jackson was ordered to open the cash register. The robbers several times used the words "move it, move it." They exited on foot towards the rear of the building where a car driven by Samuel Brown took them from the scene of the crime. Samuel Brown testified for the State at the trial of Roquemore.
The testimony objected to concerned the armed robbery of Hadley Street Esso Service Station located at the corner of Hadley Street and U.S. 165 By-Pass in Monroe, Louisiana, at approximately 3:15 a. m. on the morning of October 11, 1972. Louis Green, the attendant at the service station, testified that two black males with stocking caps over their faces, armed with a bowie knife and a shotgun entered his service station. The ordered him to "move it" and "open it," the latter referring to the cash register. Both were wearing dark short-sleeved shirts. One had on dark pants and the other light ones. The robbers left on foot out of the side door. Green testified that, in spite of the stocking mask, he was able to identify Roquemore as the one with the knife.
In the recent case of State v. Thomas, No. 53,986 on the docket of this Court, 290 So.2d 690, handed down on February 18, 1974, we held the evidence of a prior murder admissible in that murder prosecution to show system or modus operandi under R.S. 15:445 and 446. In Thomas, we stated:
"Evidence of similar acts is admissible to show system, knowledge or intent under R.S. 15:445 and 15:446. We explained in State v. Spencer, 257 La. 672, 243 So. 2d 793 (1971) that crimes of `system' are those acts and offenses which are of like nature and exhibit like methods or plans of operation. Spencer was a prosecution for armed robbery, and we held that the evidence as to another armed robbery was admissible since it followed the same modus operandi as the armed robbery charged and was related in time and location.
"Likewise, in the recent case of State v. Grant and Dixon, 295 So.2d 168 on the *208 docket of this Court, decided October 29, 1973, we stated:
"`Our jurisprudence is uniform in holding that evidence of other armed robberies is admissible where almost identical tactics are used to show the "system" or modus operandi employed by the defendant. [footnote omitted] See State v. Prieur, supra; State v. Carney, 260 La. 995, 257 So.2d 687 (1972); State v. Modelist, 260 La. 945, 257 So.2d 669 (1972); State v. Moore, supra [278 So.2d 781 (La.1973)]; State v. Montegut, 257 La. 665, 243 So.2d 791 (1971); State v. Spencer, 257 La. 672, 243 So.2d 793 (1971).'"
These two armed robberies were committed one hour and twenty minutes apart in point of time by two black males with stocking caps over their faces, wearing dark short-sleeved shirts, one wearing dark pants and the other light ones, carrying the same weapons, a bowie knife and a shotgun, using the same words "move it" and "open it" and leaving the scene in the same manner. Defendant Roquemore was positively identified by both victims, Walter Jackson and Louis Green. The method and plan of operation in the Hadley Street Esso Service Station robbery was almost identical to that used in the Stop and Go Grocery robbery. We agree with the statement of the trial judge in this per curiam to this bill that, except for location and time, the two crimes were duplicates of each other and were part of a common system.
Accordingly, the evidence of the service station robbery was admissible in this robbery prosecution since it followed the same system or modus operandi as the armed robbery charged herein. R.S. 15:446.
Having concluded that the evidence or the service station robbery was admissible to show system or modus operandi, it is unnecessary for us to consider whether this evidence was also admissible in order to prove intent under R.S. 15:445 and 446.
Defense counsel also objected to this evidence on the ground that the assistant district attorney failed to make reference to this evidence in his opening statement. It is admitted by the State that this is the case. The State explains that it intentionally did not refer to this evidence in its opening statement for the reason that, had the court ruled it was inadmissible, the possible prejudice could not have been cured. We agree with the State.
Article 766 of the Code of Criminal Procedure provides:
"The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge."
Generally, the State must sufficiently explain the nature of the charge and the evidence by which it expects to prove it in the opening statement, but it need not give such evidence in minute detail. State v. Brown, 288 So.2d 339 (La. 1973); State v. Square, 257 La. 743, 244 So.2d 200 (1971); State v. Paternostro, 255 La. 369, 73 So.2d 177 (1954). Its purpose is to explain the nature of the charge and the evidence by which the State expects to prove its case. State v. Shaffer, 260 La. 605, 257 So.2d 121 (1971). The opening statement has no probative value. State v. Kreller, 255 La. 982, 233 So.2d 906. It is designed to inform and protect from surprise. State v. Shaffer, supra.
Recently, in State v. Prieur, we set forth certain guidelines in connection with the introduction of evidence of similar offenses. We gave no indication that, when such evidence is sought to be introduced, it must be referred to in the opening statement. The State, out of an abundance of caution, thought it wise not to refer to the armed robbery of the service station in its opening statement. It rightfully considered that, if the court refused to allow its introduction, it might well create a basis for a mistrial.
*209 Furthermore, defendant was not taken by surprise. Notification was given by way of a letter one month prior to trial. We find pertinent the following provision of Article 769 C.Cr.P.: "* * * If the state offers evidence that was inadvertently and in good faith omitted from the opening statement, the court, in its discretion may admit the evidence if it finds that the defendant is not taken by surprise or prejudiced in the preparation of his defense."
Defendant does not claim surprise or prejudice in the preparation of his defense. Hence, we find no merit in the argument.
Bill of Exceptions No. 2 is without merit.
Bill of Exceptions No. 3 was reserved when the State introduced into evidence the knife and shotgun used in this robbery. The objection was that the State failed to show any connection between the defendant and the items sought to be introduced. There is no claim here that the chain of custody was not established. The testimony attached to the bill deals only with that of one of the witnesses who could only say that the knife and gun looked like the ones used in the robbery.
However, there was other evidence. A police officer recovered the knife from a residence frequented by defendant and positively identified it as the one seized by him under a search warrant. He further testified that the shotgun was turned over to him at a different residence by Samuel Brown, a suspect in the case. Brown testified that he had seen the knife and shotgun at the time of the robbery. He positively identified them as the weapons introduced in evidence in this case. He testified that the knife belonged to him. No objection was made to Brown's identification of these weapons used in the robbery.
Jackson and Marbles also identified these exhibits as looking like the weapons used in the robbery of the Stop and Go Grocery.
We have consistently held that connexity is a matter for the jury to decide, so long as the object introduced is shown to the satisfaction of the trial judge to have some relevance, that is, some logical or rational connection with a fact to be proved in the case. State v. Howard, 283 So.2d 199 (La.1973). Connexity was amply shown, and defendant's contention is without merit.
Bill of Exceptions No. 3 is without merit.
Bill of Exceptions No. 4 was reserved to the denial of the motion for a new trial, and Bill of Exceptions No. 5 was taken to the overruling of defendant's motion in arrest of judgment.
The position of defendant in this Court with regard to these bills is that there was no testimony which would tend to support the verdict of guilty.
The per curiam of the trial judge in regard to Bill No. 4 treats the motion for a new trial as directed to the sufficiency of the evidence. The court was of the opinion that there was ample evidence presented by the State for the jury to reach its verdict of guilty.
The motion in arrest of judgment asserts that there was no evidence at all to support the verdict of guilty in that defendant was not identified nor were the weapons which were alleged to have been used in the armed robbery identified. The record discloses that there was evidence of such identification.
Treating the bills as raising the question of no evidence, as contended in brief in this Court, they are without merit. A review of the entire record reveals ample evidence to support every element of the crime of armed robbery.
Bills of Exceptions Nos. 4 and 5 are without merit.
For the reasons assigned, the conviction and sentence are affirmed.
*210 TATE, J., concurs and assigns written reasons.
TATE, Justice (concurring).
The writer concurs, but with reservations as to whether the "other" armed robbery should have been held admissible. The same modus operandi or system were used in both armed robberies, it is true, but that the modus operandi was the same does not end the inquiry. Proof of the modus operandi or system must be relevant to some issue in the case.
The Hadley Street Esso Service Station was robbed about an hour after the present robbery at the Stop and Go Grocery. Testimony as to the second robbery or its similar modus operandi could not be relevant, except perhaps if Roquemore's identity was at issue. (Both robbers were wearing stocking masks over their faces.) Proof that he had participated in the second robbery, closely connected in time and circumstance, would tend to prove his identity.
That is, simply because the system used in two crimes is the same does not make admissible, in a prosecution for one crime, the evidence of the other crime. The purpose of introducing the testimony of the other crime must not simply be to prove that the defendant was a bad man who had committed another crime. The probative value as to a contested issue must outweigh the prejudicial effect.
I can, for the present, subscribe to the majority opinion. In view of the close proximity in time of the two robberies, the proof of the "other" robbery may be regarded as relevant in proving that the present defendant was one of the two individuals wearing stocking masks and carrying the same weapons and using the same method.
The praiseworthy effort of the prosecution to comply with Prieur guidelines should be noted. The present opinion is useful in indicating that the "other" crimes should preferably not be referred to in the opening statement, because of their prejudicial effect and as inviting reversal in the event they are inadmissible at the trial. The defendant is adequately protected against surprise by the pre-trial notice required by Prieur.
The writer respectfully concurs in the majority opinion.