347 So.2d 221 (1977)
STATE of Louisiana
v.
Gregory HOLMES.
No. 59184.
Supreme Court of Louisiana.
June 20, 1977.
Ernest F. Teitell, Student Practitioner, William J. O'Hara, III, Supervising Atty., New Orleans, for defendant-respondent.
*222 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Emery N. Voorhies, Asst. Dist. Attys., for plaintiff-relator.
DIXON, Justice.
Defendant Gregory Holmes was indicted by the Orleans Parish Grand Jury for distribution of heroin, in violation of R.S. 40:966. Trial was set for January 10, 1977. Prior to voir dire examination defense counsel filed a motion in which he requested that the State furnish the defense with a list in its possession "containing each and every prospective juror's prior voting record in criminal trials." When the trial judge ordered the State to comply with the request the State objected and moved for a contradictory hearing. After conducting the hearing the trial judge ordered the State to furnish the requested list. The State objected and upon timely application we granted the State's application for writs. La., 342 So.2d 672.
The testimony at the hearing revealed that although not specifically required by the district attorney, it is customary for the assistant district attorneys who try cases in the Orleans Parish Criminal District Court to make notations on the jury lists furnished to them regarding the type of cases the jurors had served on and their voting records as revealed through polling. The admitted purpose of these lists was for use by the attorney compiling the list and by his fellow prosecutors in selecting juries in other criminal cases. The State explains that the vote of jurors who have previously served is revealed when the jury is polled after verdict. The State then explains the procedure:
"The practice in the District Attorney's Office is to record the vote in some manner by the Assistant District Attorney who handled the case, usually by marking on the jury list (marked Court's Exhibit # 1). The Assistant District Attorney who records the vote then sends it to the secretary of the Trial Division, where copies are made and distributed to the respective Sections of Court. The Assistant in each Section, if he so chooses, logs the vote of the particular juror on his jury venire (marked Court's Exhibit # 2) which he or she receives at the beginning of the month from the Jury Commissioner."
The defendant seeks to have this information furnished to him because, he argues, the information (which the State admittedly intends to use in voir dire) is not otherwise available, and to deny access to the information violates due process and infringes the right to a fair and impartial jury drawn from a cross section of the community.
The State argues that the information requested is privileged as it represents the "work product" of the assistant district attorney who compiled the information. However, we need not reach this question unless we find that some statutory or constitutional rule mandates discovery of the information. Defendant's constitutional arguments are premised upon his inability to obtain the information from any other source and, thus, the existence of a non-reciprocal advantage offends fundamental fairness. The hearing does reveal, contrary to the State's argument, that it would be impracticable and perhaps impossible for the various defense attorneys who practice in criminal district court to set up a system similar to the comprehensive procedures presently used in the district attorney's office. In addition, the polling procedure commonly used also prevents discovery, after the fact, of the individual juror's vote. Pursuant to C.Cr.P. 812 the judge, in his discretion, can poll the jury in writing. Although the judge and counsel are permitted to view the individual responses, in Orleans Parish the record only reveals the results of the polling, i.e., ten to two for conviction.
The Louisiana Constitution of 1974 guarantees each criminal defendant the "right to full voir dire examination of prospective jurors and to challenge jurors peremptorily." La.Const. Art. 1, § 17. It is settled that wide latitude must be given the defendant during voir dire examination in *223 order that the defendant may intelligently exercise the substantial right to exercise peremptory challenges or challenges for cause. State v. Monroe, 329 So.2d 193 (La. 1976); State v. Brumley, 320 So.2d 129 (La. 1975); State v. Jones, 282 So.2d 422 (La. 1973). As we stated in State v. Hills, 241 La. 345, 129 So.2d 12, 31 (1961):
"It is a general view as to voir dire examination that the defendant in a criminal prosecution is entitled to make reasonable and pertinent inquiries of the prospective juror so that he may exercise intelligently and wisely his right of peremptory challenge since each party has the right to put questions to a juror not only to show that there exists proper grounds for a challenge for cause, but to elicit facts to enable him to decide whether or not he will make a peremptory challenge. For this reason, a wide latitude is allowed counsel in examining jurors on their voir dire, and the scope of inquiry is best governed by a liberal discretion on the part of the Court so that if there is any likelihood that some prejudice is in the juror's mind which will even subconsciously affect his decision, this may be uncovered. It is by examination into the attitudes an inclinations of jurors before they are sworn to try a case that litigants are enabled to reject those persons, by use of peremptory challenges where necessary, who are deemed to be unlikely to approach a decision in a detached and objective manner. The Constitution itself (La.Const. of 1921, Art. 1, Sec. 10) guarantees to the accused the right to peremptorily challenge jurors, `the number of challenges to be fixed by law;' that number, in the trial of any crime for which the penalty is death or necessarily imprisonment at hard labor, is twelve (R.S. 15:354). The intelligent exercise of the right of rejection, by use of those twelve peremptory challenges, is the meat of the privilege, and can be substantially weakened by a restriction of questionsthe answers to which might be regarded as informative of a juror's attitude and therefore of vital importance to his defense. In State v. Henry, 196 La. 217, 198 So. 910, 915, this Court quoted with approval from 35 C.J. at pages 387, 405 and 406; "` * * * parties have a right to question jurors on their examination not only for a challenge for cause, but also, within reasonable limits, to elicit such facts as will enable them intelligently to exercise their right of peremptory challenge, and * * * it is error for the court to exclude questions which are pertinent for either purpose. * * * The right of peremptory challenge is a substantial right, and its freest exercise should be permitted." * * *' (Emphasis supplied.)" (Footnote omitted).
Thus, it is permissible for defendant to ask prospective jurors during voir dire questions such as: (1) Have you ever served on a criminal jury before? (2) What was the charge in that case? (3) What was the verdict in the case?, etc. Although there is contrary jurisprudence, it is supported by neither statute nor reason. Therefore, to the extent that other cases are in conflict with this opinion they are overruled. Specifically overruled are State v. Roquemore, 292 So.2d 204 (La.1974); State v. Spencer, 257 La. 672, 243 So.2d 793 (1971); State v. Martin, 250 La. 705, 198 So.2d 897 (1967). The Martin case was grounded on Article 357 of our former Code of Criminal Procedure, which provided that voir dire examination should be limited to ascertaining the "qualifications of the juror." Article 786 of the Code of Criminal Procedure of 1966 omits the provisions of former C.Cr.P. 357, and the Official Revision Comment refers with apparent approval to the 1961 case of State v. Hills, supra.
As we noted in State v. Wright, 344 So.2d 1014 (La.1977), once defendant demonstrates that the information concerning past jury experience is inaccessible to him, and that the State intends to use this information, he would have shown that the information was necessary to prevent undue prejudice to his case, hardship or injustice. Since voir dire has not yet been conducted, defendant's claims based on fundamental fairness and inability to obtain the *224 information through other means are premature.
Since we find no constitutional or statutory rule requiring the State to disclose the lists in question, we find that the trial judge improperly ordered same. Accordingly, the judge's ruling is reversed and the case is remanded for further proceedings not inconsistent with the views expressed herein.
MARCUS, J., concurs.
SANDERS, C. J., concurs in the decree.
TATE, J., dissents and assigns reasons.
TATE, Justice, dissenting.
I respectfully dissent from the majority opinion.
In my opinion, the trial court did not abuse its discretion by requiring the prosecutor to furnish the defense with a list in the state's possession. The list showed the prior voting record in criminal cases of prospective jurors impanelled to try the present case.
The recording of these votes over many trial is not part of the "work product" developed by the prosecuting attorney in preparation for this trial. The listing is part of governmental record-keeping by the prosecutor's office as an institution of information not readily available, if at all, to non-institutional counsel or even to defense counsel of legal aid institutional offices.
All parties concede that this information is of assistance in the exercise of challenges designed to secure a fair and impartial jury. I am unable to see how the state could be prejudiced by affording the accused an equal chance with it to select a fair jury. "The duty of the prosecutor is to seek justice, not to convict." American Bar Association Standards Relating to the Prosecution Function, Standard 1.1(c) (1971).
The resources of the legal profession are today strained to accommodate the needs of the criminal justice system. In actuality, public monies are for all practical purposes used to fund both the prosecution and defense of criminal charges.
In this context, we should encourage rather than inhibit the efforts of trial judges, such as the present, to help assure a fair trial, and at the same time avoid duplication of investigation involving the wasteful expenditure of defense lawyer-time in collecting data already collected at public expense (for the supposed purpose of helping to obtain fair and impartial trial juries).
The trial court had the inherent power to issue its order. La.C.Cr.P. arts. 3, 16, 17; La.Const. of 1974, Art. 5, Section 2. I find no abuse by the trial court of its powers thus statutorily and constitutionally conferred upon it.
The majority correctly notes, I should add, that the defendant is entitled to the information granted by the trial court (and now denied by us) upon his demonstrating that past jury experience is inaccessible to him. State v. Wright, 344 So.2d 1014 (La. 1977).[1]
The majority does not seem to essentially differ with this dissent's view as to the defense right to receive the information, but only with the timing of its availability to the defense.
Both defense and prosecution have already in oral argument demonstrates, in my opinion, that the prerequisite showing by the defense will easily be met. If I interpret the majority opinion correctly, the defense will be able to obtain the lists if, on the date voir dire examination actually commences, it makes the same showing of *225 unavailability it already has (prematurely, the majority says).
Voir dire examination of prospective jurors as to prior voting records cannot practicably afford the defendant information for the purpose soughteven if we overrule the contrary jurisprudence which disapproved examination of this nature (as the majority says it does). The attempt to secure this information by voir dire is also fraught with possibilities of prejudice, mistrial, and collateral inquiry (types of crimes, etc.).[2]
My basic disagreement with the majority opinion, however, is its implication that, in the absence of statute expressly enabling the action, the trial court may not issue necessary and proper orders in aid of its jurisdiction such as the present. La.C.Cr.P. arts. 3, 16, 17; La.Const. of 1974, Art. 5, Section 2. To the contrary, this court has always recognized the judicial power, in the absence of contrary statute, to regulate proceedings before the court through the exercise of the court's inherent powers to issue needful orders in aid of its jurisdiction. See, e.g., State v. Rasheed, 248 La. 309, 178 So.2d 261 (1965).[3]
I must therefore respectfully dissent.
NOTES
[1] In Wright, we refused to reverse a conviction, where the reversal was sought on the basis of the trial court's denial of pre-trial access by the defense to the voting lists. We there found no such abuse of discretion as would require reversal, in the absence of a showing that the accused had actually been prejudiced by the denial.

An entirely different issue is presented to us now: Did this trial court abuse its discretion by requiring pretrial disclosure of such voting lists? We should not lightly disturb the court's use of its discretion, in a commendable attempt to assure a fair trial through facilitating an equal opportunity of both parties to select a fair jury.
[2] It is not productive of efficient jury voir dire to require examination of each prospective juror as to his past criminal voting records, especially where such information can be learned instead at a glance by examining a previously prepared list. This is a wasteful use of the time of judge, attorneys, and prospective jurors. The possibilities of prejudice to the accused are inherent, if required (as the state, possessing the lists, is not) to ask each juror questions of the nature indicated an to have their responses heard by the other prospective jurors.
[3] In Rasheed, in the then-absence of legislative provision therefor, this court judicially created a motion to suppress unconstitutionally seized evidence, and by court decision (only) required that such motion be made before trial, upon penalty of waiver of the right to object to the evidence as unconstitutionally seized.

The court did so, in the absence of statute, to provide a procedure wherever the accused could vindicate his constitutional rights without at the same time prolonging or disrupting the trial on the merits.