363 So.2d 499 (1978)
STATE of Louisiana
v.
Robert C. SWIFT and Alfred R. Patterson.
No. 61915.
Supreme Court of Louisiana.
October 9, 1978.
*500 William J. O'Hara, III, Supervising Atty., New Orleans, Philip A. Costa, Student Practitioner, for Alfred R. Patterson.
Clement F. Perschall, New Orleans, for Robert C. Swift.
*501 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Nick F. Noriea, Jr., Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
In the early morning hours of May 17, 1976, defendants Robert C. Swift and Alfred R. Patterson were arrested for the crime of simple robbery of a record shop, a violation of R.S. 14:62. Defendants were tried before a jury on February 8,1977. On the morning of the trial the defense filed a motion to request from the prosecution the voting records on each juror on the jury panel. The motion was denied by the trial judge, although the prosecution admitted having the records and intending to use them in the case. When defense counsel attempted on voir dire to elicit this information from the prospective juror, the trial judge ex proprio motu limited the scope of the questions to whether the venireman had prior jury experience and would not allow counsel to inquire concerning the verdicts or actual vote of each venireman. The trial proceeded and the defendants were found guilty as charged. On appeal they assign seven errors for reversal of their convictions.

Assignment of Error No. 1
The defendants' first assignment of error concerns the trial judge's denial of their motion to obtain from the prosecution the voting records of each juror on the jury panel. According to the defendants, the trial judge's ruling had the effect of denying them the right to a full voir dire examination secured to them by Article I, § 17 of the Louisiana Constitution.
This issue has been addressed a number of times by this court in recent years. According to our decisions, to obtain the voting records held by the prosecution the defendant must show that the records are necessary to prevent prejudice to his case, hardship, or injury. State v. Wright, 344 So.2d 1014 (La.1977). To make this showing the accused is required to demonstrate that he cannot practicably obtain the information and that the State intends to use the information in selecting the jury. State v. Singleton, 352 So.2d 191 (La.1977); State v. Rey, 351 So.2d 489 (La.1977); State v. Wright, supra. In the present case the State freely admitted that it intended to use the voter information to select the jury, and therefore the defendants need show only that they could not practicably obtain the information by other means.
In State v. Holmes, 347 So.2d 221 (La. 1977), a defendant's claim that he could not obtain the information concerning past juror activity was deemed premature when raised prior to voir dire. In this case, however, the defendants attempted to elicit the information on voir dire but were prevented from pursuing the line of questioning by the trial judge. The defendants argue in brief that their poverty prevents their obtaining the information except from the prosecution. Furthermore, the independent nature of the defense bar is alleged to preclude, because of lack of organization, a coordinated activity to amass voting records from other criminal trials.
In his per curiam the trial judge stated that the Office of the Indigent Defender Program (O.I.D.P.) kept a record of the vote in all criminal trials in Orleans Parish by assigning a representative to each section of the Criminal District Court and that these records were substantially similar to those sought from the prosecution. Moreover, the trial judge stated that an attorney from O.I.D.P. was seated with defense counsel during voir dire because defense counsel was a student practitioner from the Loyola Law School Clinic. It appears, therefore, that the defendants were not prejudiced by the trial court's denial of the motion because they could have obtained the records from O.I.D.P. The defendants' failure to challenge the trial judge's statement that the records existed and were available to them persuades us that they have not demonstrated the requisite unavailability of the records through alternative means.
This assignment is without merit.

*502 Assignment of Error No. 2

The defendants assign as reversible error the trial judge's refusal to allow defense counsel to question prospective jurors with regard to their prior jury service.
During voir dire the following exchange occurred:
"BY MR. TEITTEL:
. . . Now, does anyone here have any prior jury service, either criminal or civil? You have, sir?
BY A JUROR:
I was on a criminal jury.
BY MR. TEITTEL:
And, did you reach a verdict?
BY THE JUROR:
Yes.
BY THE COURT:
Just a moment. That's an improper question. You can ask them if they had previous jury experience, and the answer is either yes or no, and that's as far as you can go. We can't try other cases that have already been tried in here today. We have to try this one.
BY MR. TEITTEL:
Your Honor, I'll just note an objection.
BY THE COURT:
Alright."
The voir dire and trial in the instant case took place on February 8, 1977. Five months later, on June 20, 1977, this court's decision in State v. Holmes, supra, was rendered wherein the cases of State v. Roquemore, 292 So.2d 204 (La.1974); State v. Spencer, 257 La. 672, 243 So.2d 793 (1971); and State v. Martin, 250 La. 705, 198 So.2d 897 (1967) were overruled as to the restricted scope of voir dire. The court held that it was permissible for the defendant to ask questions such as whether one had served on a jury before, the charge in that case, the verdict in that case, and the like. The issue therefore becomes whether the decision in State v. Holmes, supra, should be applied retroactively, thereby requiring a reversal in this instance.[1]
The determinative factor in giving retroactive application to a new rule of law is whether the rule goes to the integrity of the fact-finding process. State v. King, 347 So.2d 1108 (La.1977); City of Baton Rouge v. Short, 345 So.2d 37 (La.1977); State v. Liesk, 326 So.2d 871 (La.1976). See also, Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).
In discussing the retroactive application of interpretations of the federal constitution, Justice White said:
"Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good-faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances." Williams v. United States, 401 U.S. at 653, 91 S.Ct. at 1152, 28 L.Ed.2d at 395.
The purpose of the rule of State v. Holmes, supra, is to assure the defendant's right to "full voir dire examination of prospective jurors," granted by Article I, § 17 of the Louisiana Constitution. If not allowed to question prospective jurors on past voting records in other trials, a defense attorney may not exercise his peremptory challenges as effectively, but it is difficult to argue that the accuracy of the verdict is thereby called into question. Therefore, under the traditional analysis as stated above, the rule in Holmes does not appear to bear this substantial relationship to the fact-finding process.
Since it is determined that the rule in Holmes does not substantially enhance the *503 integrity of the fact-finding process, we must consider certain factors including the purpose served by the new rule, the extent of reliance on the old standard, and the effect a retroactive application would have on the administration of justice. State v. King, supra. See also Hankerson v. North Carolina, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977); Williams v. United States, supra; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Although the purpose of the rule (to assure full voir dire and thereby enhance the intelligent use of peremptory challenges by the defendant) is worthy of recognition, it is in this instance outweighed by the reliance which authorities have placed upon the older rule articulated in State v. Roquemore, supra.
Moreover, we find support for a prospective application of Holmes in the jurisprudence dealing with the retroactive application of decisions concerning the selection and composition of juries. In State v. Robinson, 361 So.2d 864, we declined to give retroactive application to the decision in Ballew v. Georgia, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978), which prohibited the use of five member juries in criminal cases. Although we held in State v. Cage, 337 So.2d 1123 (La.1976), that an indictment returned by an improperly constituted grand jury was to be quashed, we specifically declined to apply the decision retroactively in State v. Ferguson, 358 So.2d 1214 (La.1978). State v. Hoffman, 345 So.2d 1 (La.1977), announced a new method for selecting a jury panel but gave it only prospective application. A similar stance was taken by the United States Supreme Court in Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975), when it gave only prospective application to its decision in Taylor v. Louisiana, 419 U.S. 522,95 S.Ct. 672, 42 L.Ed.2d 690 (1975), wherein it had been decided that excluding women from jury venires was a violation of the Sixth Amendment.
We therefore hold that the rule in State v. Holmes, supra, applies only to those prosecutions begun after the date the opinion was rendered, June 20, 1977.
The assignment of error is without merit.

Assignment of Error No. 3
The defense maintains that it was reversible error for the trial judge to allow the assistant district attorney to show a map to one of the witnesses, Officer Stanley Brown, and to allow the witness to testify from it. The incident occurred after Officer Brown had testified concerning the route taken by the defendants after they left the record store with the police in pursuit. The assistant district attorney then showed Officer Brown a map of the area complete with street names and the alleged route of the defendants and then began to recapitulate the substance of the officer's testimony concerning the flight of the burglars.
Defendants contend that this procedure resulted in the prosecution's leading its own witness in violation of R.S. 15:277.[2] However, it is questionable whether the prosecutor actually suggested an answer to Officer Brown, since the witness had already testified in some detail about the movements of the defendants. Moreover, even if the question was leading, the defendants must show that prejudice thereby resulted to them in order to obtain a reversal. State v. Haynes, 339 So.2d 328 (La.1976); State v. Fallon, 290 So.2d 273 (La.1974). In brief the defendants argue that by the map the prosecution was able to link the defendants to the scene of the crime. However, Officer Brown's testimony by itself was sufficient to do this, and as a result this argument is also without merit.

Assignment of Error No. 4
The defendants herein allege that the trial court committed reversible error by allowing the State to assume facts not in *504 evidence as to the identification of one of the co-defendants made by a witness, a violation of R.S. 15-278.[3]
At trial defendants objected when the assistant district attorney asked Officer Smock whether Robert Swift was wearing the same clothes when he was arrested as when he ran from the record shop. Defendants contend that this question assumed facts not in evidence because the names of both defendants were not known by both officers until after the arrest.
The mere fact that the defendant Swift's name was used in the questioning of Officer Smock did not substantially prejudice the defendants' case. Officer Brown had previously identified defendant Swift as one of the men he saw fleeing the record shop. Officer Smock had earlier testified that he had seen one man leaving the record store who was wearing a particular sort of shirt and that he subsequently placed him under arrest. He further testified that when he arrested Robert Swift the defendant was wearing the same sort of shirt that he had noticed one of the burglars to be wearing. In the absence of a clear abuse calculated to prejudice the defendant's rights, a verdict should not be disturbed on these grounds. State v. Terregano, 336 So.2d 859 (La.1976).
The assignment is without merit.

Assignment of Error No. 5
The defendants assign as error the trial judge's ruling allowing the State to introduce photographs of the defendants to show their dress on the night of the burglary. They maintain that the best evidence rule, R.S. 15:436,[4] required the prosecution to introduce the clothes worn by the defendants rather than a photograph of the garments.
In State v. Bennett, 341 So.2d 847 (La. 1976), this court held that it was not reversible error for the State to introduce the photograph of a stolen watch even if to do so violated the best evidence rule unless the defendant could show that prejudice thereby resulted to him. In the instant case the defendants have not attempted to show what prejudice to them resulted from the prosecution's introduction of the photographs rather than the clothes.
This assignment is without merit.

Assignment of Error No. 6
The defendants argue that the trial court was in error in allowing the State to lead its own witness. It is contended that this violation of R.S. 15:277[5] constitutes reversible error.
During the defense examination of Mrs. Patterson, the mother of one of the defendants, she stated that Officers Brown and Smock came to her house after the burglary on an unrelated incident and asked her if a person staying at her home, one Milton Wells, was one of the defendants, Robert Swift. Since the police identification of the defendants was of great importance to the State's case, Officer Smock was called on rebuttal to refute this potentially damaging testimony and the following exchange ensued:
"Q And, did you at anytime tell Mrs. Patterson that you thought this other unknown subject
BY MR. ALFORD:
I'm going to object. He's leading his witness.
BY MR. NORIEA:
Your Honor, I can ask him if he made a statement or if it was made in his presence.
BY MR. ALFORD:
He can ask him what he did and what he said, but he can't lead him.

*505 BY THE COURT:
Alright, but, this is a rebuttal witness, now.
BY MR. ALFORD:
But, he still
BY THE COURT:
Is he going to ask him something that somebody has testified to?
BY MR. NORIEA:
Yes, sir.
BY THE COURT:
That he wants contradicted?
BY MR. NORIEA:
Yes, sir.
BY THE COURT:
Well, then, he has a right to ask the question."
From the record it appears that the prosecutor was not trying to lead the witness by suggesting an answer to him but was merely referring him to the prior testimony. Even had this question been improper, the defendants have failed to show any prejudicial effect that the question had on their defense. Although counsel should not be permitted to mold the witness' testimony, a verdict should not be reversed in the absence of a clear abuse calculated to prejudice the accused's rights. State v. Sheppard, 350 So.2d 615 (La.1977); State v. Washington, 294 So.2d 794 (La.1974).
The assignment is without merit.

Assignment of Error No. 7
The defendants allege that it was reversible error for the trial court to allow the prosecutor to argue issues beyond the scope of testimony of the witnesses.
Article 774 of the Code of Criminal Procedure provides:
"The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant."
The defendants contend that the prosecution violated this provision of the Code by arguing the reasons for the lack of fingerprints at the scene of the burglary. However, from the record it appears that at trial testimony was adduced to the effect that a crowbar used in entering the store and equipment which the burglars were holding when the police spotted them were not dusted for fingerprints. One police officer also testified concerning the types of surfaces which were good for taking fingerprints. After such testimony, argument concerning the procedure for taking fingerprints does not appear to go outside the scope of the evidence. Moreover, our jurisprudence is clear that even in the presence of improper argument a verdict should not be reversed unless the court is convinced that the jury was influenced by the remarks and that they contributed to its verdict. State v. Crumholt, 357 So.2d 526 (La. 1978); State v. Lee, 340 So.2d 180 (La.1976). In this instance the defendants have made no such showing.
This assignment is without merit.
The convictions and sentences are affirmed.
SUMMERS, J., concurs.
CALOGERO, J., concurs and assigns reasons.
CALOGERO, Justice, concurring.
Although I concur in the majority's determination that the new rule allowing defendants to question prospective jurors about their prior service should not be applied retroactively, I do not agree that the right to question them applies only to those prosecutions begun after State v. Holmes was rendered. The general rule to question jurors on the subject was recognized in State v. Wright, 344 So.2d 1014 (La.1977), rendered April 11, 1977, and should be applied to trials begun after that date.
NOTES
[1] In State v. McGhee, 350 So.2d 370 (La.1977), the issue was not decided because other grounds served for a reversal. The question was not decided in State v. Singleton, 352 So.2d 191 (La.1977), because defense counsel did not question any juror concerning his prior voting.
[2] R.S. 15-277 provides:

"A leading question is one which suggests to the witness the answer he is to deliver, and though framed in the alternative, is inadmissible when propounded to one's own witness, unless such witness be unwilling or hostile."
[3] R.S. 15:278 provides:

"Neither upon direct nor cross-examination is it permissible to propound a question which assumes as true that which the jury alone are charged with finding, or which assumes as proven facts which have not been proven, or which assumes that particular answers have been given that have not been given."
[4] R.S. 15:436 provides:

"The best evidence which from the nature of the case must be supposed to exist, and which is within a party's control, must be produced.
[5] See note, 2, supra.