368 So.2d 965 (1979)
STATE of Louisiana
v.
Danny WELCH.
No. 62390.
Supreme Court of Louisiana.
January 29, 1979.
Rehearing Denied March 5, 1979.
*966 Lawrence M. Lehmann, Miriam G. Waltzer, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Bridget E. Bane, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Chief Justice.
The Grand Jury of Orleans Parish returned an indictment on October 21, 1976 charging that on October 12, 1976 Danny Welch committed aggravated rape upon a named female. La.Rev.Stat. 14:42 (1975). After trial the jury returned a verdict of guilty of attempted aggravated rape, and the trial judge sentenced defendant to serve twenty-five years imprisonment at hard labor without benefit of probation or parole. In brief the defense argues eleven contentions of error on this appeal.
*967 Arguments I and II: On the day of trial, before the jury venire was brought into the courtroom, defense counsel filed a motion to be furnished with "a copy of any and all information, data, computer printouts, and lists or the fruits thereof in the possession of the Assistant District Attorney who will try this cause pertaining to the prior voting record of each and every prospective juror in the present jury panel that will be used in the trial of this cause."
The prosecutor responded that the State had no such computer print-outs nor the fruit of such and did not intend to use any in the trial. And, if the State did intend to use a compilation of past voting records of jurors, the defense was not entitled to these records; furthermore, the defense had the same access the State had to that information from the court records.
The trial judge recognized that the State had no such computer print-out. Insofar as a compilation of the voting record of the jurors was concerned, he was of the opinion the State was not required to furnish that record. To this ruling the defense objected and assigned as error the refusal to furnish the voting records and the designation of them as the "work product" of the State.
It should be noted that the record does not indicate that the trial judge referred to a compilation of the voting record of jurors as a "work product" of the State.
In State v. Wright, 344 So.2d 1014 (La. 1977), we recognized the rule enunciated by the United States Supreme Court in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). By its holding the Hickman court announced that a party is not entitled to discover written statements in the files of the attorney for the adverse party or memoranda made by him in anticipation of litigation, without any showing of necessity for the production of such material or any demonstration that the "denial of such production would unduly prejudice the preparation of petitioner's case or cause him any hardship or injustice." 329 U.S. at 509, 67 S.Ct. at 392; also 344 So.2d at 1017.
On this premise, in a case involving a defense discovery motion for a list of voting records of prospective jurors compiled by members of the district attorney's office, the Court in State v. Wright held:
"Consequently, defendant was required to make in support of his motion proper showing that production of the voting records of the jurors was necessary in order to prevent undue prejudice to his case, hardship or injustice. In order to make such a showing, however, he would have been required to demonstrate that he could not practicably obtain information from other sources, and that the State intended to use it in selecting the jury. Had defendant done so, he should have been given the information before voir dire or else allowed to question the prospective jurors on the subject." See also State v. Swift, 363 So.2d 499 (La. 1978); State v. Singleton, 352 So.2d 191; State v. Holmes, 347 So.2d 221 (La.1977).
Aside from conclusory allegations on the part of defense counsel no showing has been made to meet the test prescribed by our decisions. Unless the defense shoulders this burden, the State need not negate the requirement.
These assignments are without merit.
Argument III: Defendant complains that the trial judge was in error when he denied defense counsel the right to question jury veniremen during voir dire examination about their past jury experience. At the time the offense charged in this case occurred on October 12, 1976, and when this case was tried on May 23, 24 and 25, 1977, the rule of law then prevailing vested discretion in the trial judge where questions involving the interrogation of veniremen concerning previous jury service were concerned. State v. Roquemore, 292 So.2d 204 (La.1974); State v. Spencer, 257 La. 672, 243 So.2d 793 (1971); State v. Martin, 250 La. 705, 198 So.2d 897 (La.1967).
Shortly after the trial of the instant case, this Court decided State v. Holmes, 347 So.2d 221, on June 20, 1977. That case reversed the former jurisprudence on the subject and established a new rule to the effect that it was permissible to ask prospective *968 jurors questions concerning prior jury service such as: whether they had served on a jury in a criminal trial; what was the charge; what was the verdict, etc. Thereafter, in State v. Swift, 363 So.2d 499 (La.1978), we reviewed the criteria for retroactive application of a new rule of law. Because the Holmes decision did not substantially enhance the integrity of the fact-finding process, it was decided that the rule in Holmes was to be applied prospectively to prosecutions begun after June 20, 1977.
In the instant case, therefore, the trial judge relying on the rule of law then prevailing, did not abuse his discretion when he denied defense counsel's attempt to question prospective jurors concerning their previous jury service.
Argument IV: Contending that prospective jurors should not have been excused for cause simply because they indicated they had scruples against the death penalty, defense counsel argues the accused was denied his constitutional right to be tried by a jury impartially drawn from a cross section of the community.
During voir dire six jurors were successfully challenged for cause by the prosecutor when they indicated that they were opposed to the death penalty or had such doubts about its application that they would be unable to make a fair determination of defendant's guilt.
Louisiana's law on the subject is set forth in the following pertinent part of Article 798 of the Code of Criminal Procedure:
"It is good cause for challenge on the part of the state, but not on the part of defendant, that: . . .
"(2) The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and makes it unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making an impartial determination as to the defendant's guilt; . . ."
Based upon this authority and an examination of the record, we are satisfied that all prospective jurors excused for cause over defense objection testified that they were either completely opposed to the death penalty or that their attitude toward the penalty would prevent them from making an impartial determination as to defendant's guilt.
The rule expressed in Article 798 is in keeping with the decision of the United States Supreme Court in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). There the Court approved in principle the State's right to exclude from the jury in a capital case those who say that they could never vote to impose the death penalty or that they would refuse even to consider its imposition in the case before them. Nor did the Court condemn the right of the prosecution to challenge for cause those prospective jurors who state that their reservations about capital punishment would prevent them from making an impartial decision as to defendant's guilt.
As we understand the defense argument in brief, however, its claim is that in order to be tried before a jury which is impartially drawn from a cross section of the community jurors opposed to capital punishment may not be excluded. To do so, it is contended, deprives defendant of representation on the jury of an identifiable class of citizens. The effect of that exclusion is said to deprive defendant of his constitutional right to due process and equal protection of the law.
There is no authority for defendant's position. A juror who declares he cannot abide by the law and impose the death penalty when the law ordains that it should be imposed is not legally acceptable. Nor is a juror acceptable when he concedes that his attitude toward the death penalty would prevent him from making an impartial determination as to defendant's guilt. What is required of jurors is that they abide by the law applicable to the case and judge the defendant's guilt or innocence impartially.
*969 Another factor militating against prejudice to the defendant is the fact that the jury did not return a verdict of guilty, finding the defendant guilty of attempted aggravated rape, a crime not punishable by death. Moreover, the death penalty has been declared unconstitutional when imposed for rape of an adult female.
Argument V: The assignments of error relied upon by the defense to support its argument on this point concerns the prosecutor's reference to matters during trial and in closing argument which the defense avers were not supported by the evidence.
Specifically, the objectionable reference was to scratch marks on the body of defendant shortly after the offense was committed. We find the defense contention to be without merit. The prosecutor's reference to scratch marks on defendant's body was well within the scope of the trial evidence. La.Code Crim.Pro. art. 774.
Defendant's brief asserts that "prior testimony revealed during the trial that nothing could be seen on the photographs taken by the police, and that the presence of scratch marks was mere conjecture on the part of the police officers." This statement is not well-founded. As seen in the transcript, Officer Deborah Langla testified that she went to the hospital on the day of the crime and observed scratch marks on Welch's torso. She described these scratches in detail. She also testified that she took pictures of the marks, which she stated appeared to be scratch marks. The photographs were admitted into evidence without objection and displayed to the jury. Scratch marks appear thereon. Officer Sheila Bass also testified that she observed marks on defendant's body.
The defense also complains that the following statement by the prosecutor was not supported by the evidence: ".... and I am telling you that we are fortunate that we aren't here for a rape-homicide. That he did not change his mind or let something change it."
This testimony of the victim supports the prosecutor's statement:
". . . and he grabbed me around the throat like this. And he put the bag over my mouth. And I couldn't breathe and he stuck his thumb down my throat with the bag on it. He said, he said, "You can either do what I say or I'll kill you. I'm going to kill myself today so it won't matter what I do to you."
Argument VI: Error is assigned by the defense because the State did not require that a sperm motility test and a secreter test be performed by the Coroner's office in connection with the sperm found in the vagina of the victim.
It is not incumbent upon the State to perform any scientific tests on any evidence in its possession. Its failure to do so is a matter which addresses itself to the weight of the evidence, and in this case the State's failure was to be assessed by the jury.
Argument VII: A charge is made that trial counsel for Welch was ineffective because he failed to move for the suppression of a suicide note written by the defendant.
From the record it is apparent that it was part of the defense trial strategy to use the note to provoke jury sympathy for the accused. Defense counsel asked Welch to read the note to the jury and to explain the text. There was no explicit reference to the rape in the note. It may be inferred from the verdict that, despite the violence of this crime, the defense strategy was effective. Moreover, the entire effort was competent and industrious.
Argument VIII: In this argument it is asserted that the testimony of Officer Sheila Bass was improperly admitted. Officer Bass was asked whether a description of defendant's clothes had been furnished to her by the victim. Without stating what that description was, the trial court allowed the State's witness to testify that the description of defendant's clothes given by the victim matched the clothes of defendant. This is said to be a conclusionary statement based upon the witness' opinion, an opinion she was not qualified to express.
*970 We think the contention is without merit. No questions involving a knowledge obtained only by means of a special training or experience is involved in the prosaic comparison of clothing. There is therefore no necessity to qualify a witness as an expert to express such an opinion. La.Rev.Stat. 15:464-467.
Argument IX: Here defense counsel argues that his cross-examination of the victim was unduly limited. The assignment of error relied upon refers to a portion of the transcript where defense counsel's cross-examination departed from inquiry into facts relevant to the offense and sought to inquire into whether the victim's sister had received shock treatments. The prosecutor objected that the question should not be allowed until a showing was made that it was relevant. When defense counsel made no response, the trial judge directed defense counsel to move to another subject. The ruling is assigned as error.
It is the defense theory that the purpose of this line of questioning was to show bias against the defendant on the part of the victim and her family, and this bias was the motive underlying the charge which resulted in this prosecution.
At best the argument is tenuous. In the protracted cross-examination which preceded and followed the contested ruling, defense counsel was given wide latitude to explore the theory advanced in brief at this time. However, when the State objected to the single question at issue here, defense counsel made no effort to explain the relevancy of the question. Taken in the context of the trial, the ruling of the trial judge was not an abuse of his authority and discretion in the conduct of the discipline of his court. La.Rev.Stat. 15:275.
Argument X: To support the defense contention that the victim and her mother conspired to falsely accuse him of rape in order to prevent any further contact by defendant with the victim's family, an effort was made by defense counsel to interrogate Dr. Cook, a part time psychiatric social worker, in order to impeach the testimony of the victim's mother. However, defense counsel did not adhere to the procedure prescribed by law in such cases.
The victim's mother was a defense witness. No proper foundation had been established by the defense for the impeachment of its own witness as Section 487 of Title 15 of the Revised Statutes requires:
"No one can impeach his own witness, unless he has been taken by surprise by the testimony of such witness, or unless the witness shows hostility toward him, and even then, the impeachment must be limited to prove contradictory statements."
Surprise in the sense of the last preceding article, as defined by Section 488, does not arise out of the mere failure of the witness to testify as expected, but of his testifying upon some material matter against the party introducing him and in favor of the other side.
Although hostility is not defined by statute, this Court has suggested that hostility turns on a showing that the witness' interest is on the side of the opposite party to such an extent that he or she is unlikely to give a true account of the transaction. State v. Willis, 241 La. 796, 131 So.2d 792 (1961).
In the present case, it is arguable that defense counsel did not establish either that he was surprised by the testimony of the victim's mother or that she was hostile. In any event, in order to impeach its own witness through prior inconsistent statements it was necessary that the defense comply with Section 493 of Title 15:
"Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place, and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have the opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making *971 such statement, evidence that he did make it is admissible."
No close questioning of the witness concerning any prior statements she made was undertaken by the defense. At no time was her attention called to her prior statement, or the time, place, and circumstances and the person to whom the alleged statement was made. Under these circumstances the trial judge properly denied the defense the right to impeach its own witness.
Argument XI: The defense submits that the twenty-five year sentence is clearly excessive and that the trial judge gave no reasons for the sentence imposed as required by Article 894.1 of the Code of Criminal Procedure.
The argument cannot be sustained. At the time of sentencing the defense made no objection that the sentence was excessive. Insofar as compliance with Article 894.1 is concerned, the Article was not enacted until after sentencing and is therefore inapplicable to this case.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, CALOGERO and DENNIS, JJ., concur.
BLANCHE, J., not participating.

On Application For Rehearing
PER CURIAM.
The defendant was convicted of attempted aggravated rape, La.R.S. 14:27, 42 (1975), and sentenced to twenty-five years imprisonment.
The defendant's application for rehearing calls to our attention that, whereas the transcript reflects that the trial judge sentenced the defendant to "twenty-five years imprisonment in the custody of the Department of Corrections," the minute entry is in conflict with the transcript. The minute entry indicates the defendant was sentenced "to serve 25 years imprisonment at hard labor, without benefit of probation or parole." (Italics ours).
At the time of the crime in this case, the penalty for aggravated rape was death. La.R.S. 14:42, as amended by Act 612 of 1975 (prior to amendment by Act 343 of 1977). The penalty for attempt to commit a crime punishable by death was imprisonment at hard labor for not more than fifty years. La.R.S. 14:27(D)(1) (as amended by Act 132 of 1975).
Therefore, the sentence of 25 years imprisonment for attempted aggravated rape could not, as a matter of law, be without benefit of parole.
Our affirmance of the conviction and sentence is hereby modified to correct the inadvertent statement that the sentence was without benefit of probation or parole. We reserve the state's right to apply for a rehearing within fourteen days as to this modification of our original opinion.
STATEMENT IN ORIGINAL OPINION AMENDED; WITH THIS AMENDMENT, APPLICATION FOR REHEARING IS DENIED.
BLANCHE, J., not participating.