508 So.2d 943 (1987)
STATE of Louisiana
v.
Lloyd J. ANCAR.
No. KA 6905.
Court of Appeal of Louisiana, Fourth Circuit.
June 3, 1987.
*945 Sherry Watters, Orleans Indigent Defender Program, New Orleans, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William A. Marshall, Asst. Dist. Atty., New Orleans, for appellee.
Before CIACCIO, WARD and WILLIAMS, JJ.
CIACCIO, Judge.
On the basis of six assignments of error,[1] defendant appeals his conviction for second degree murder. La.R.S. 14:30.1. Finding no error warranting reversal of defendant's conviction, we affirm.
There was one eyewitness to the crime, Wilbert Byes. He testified that he and Larry Noil were attempting to repair the tires on Noil's car which had been slashed, when defendant walked up to them. While standing near the car defendant dropped a pistol. Larry Noil picked up the gun and placed it in the glove compartment of his car.
The three men then drove in Byes's car to a service station. Noil purchased a tire and had it mounted on the rim from which the slashed tire had been removed. The three men then got back into Byes's car to return to Noil's car.
Byes drove, Noil rode in the passenger seat, and defendant sat in the rear. As they were returning to Noil's car, defendant pulled a gun and fired two bullets into Noil's head. He fired a third shot which grazed Byes's face.
Byes had already begun slowing down the car. He placed the transmission in neutral and leaped from the moving car. The car rode off the road and came to a stop near some trees in a grassy area.
Defendant left the car and approached Byes who was reluctant to allow defendant to get near him. Three other men drove up, however, and stopped near where Byes's car was stopped in the grass off of the road. These three men were Robert Lloyd, Larry Legania and Lenard Lagania.
Robert Lloyd testified that prior to the crime defendant had stated that he had slashed Noil's tires and that he was going to "get" Noil over something involving money. Prior to the shooting, Lloyd had given defendant a ride and dropped him off about a block from Noil's car. He stated that he and the Legania brothers had returned to the area because they feared that defendant might harm Noil.
Lloyd testified that after the crime defendant stated that he had gotten Noil, that he had shot him in the head, and that he had to get Byes.
Almost immediately after arriving at the scene of the crime, Lenard Lagania left, walking. Those who remained helped Byes push his car back onto the road.
The police had been called. As they approached the scene Larry Lagania, Robert Lloyd, and defendant drove away in Lloyd's car. Byes started to drive away, but the police stopped him. The police were also able to stop Lloyd's car, but did not arrest anyone because the men convinced them that there had been a fight but that no one had been hurt. Noil's body was not discovered until the next day, when it was found in the weeds in the area where Byes's car had stopped after leaving the road.
Mrs. Noil testified that Noil had been carrying $1,000.00. No money was found on him. Lloyd testified that after the shooting defendant told him that he had $900.00. Noil had spent some money buying the tire.
*946 Defendant's girlfriend testified that he had been with her the entire night of the crime.

Assignments of Error Nos. 1 and 2
Defendant's first two assignments of error concern the State's failure to comply with discovery requests. By pre-trial motion defendant requested "any oral or written confession, statement and/or admission whether inculpatory or exculpatory, and if so specify which." See La. C.Cr.P. Art. 716. The state answered that none existed. Defendant also requested information and copies of reports concerning any physical examinations or scientific tests made in connection with this case. See La. C.Cr.P. Art. 719. The state provided some reports prior to trial, but not all of the reports which it introduced at trial.
At the beginning of trial the state served defendant with notice of its intention to introduce in evidence inculpatory statements, as required by La. C.Cr.P. Art. 768. Defendant objected and sought to have the statements excluded because the state had responded to the discovery request for such statements that none existed. The state responded that it was unaware of the statements when its written answers were filed, but when it became aware of the statements, prior defense counsel was informed verbally. The record contains nothing to corroborate the state's claim of compliance. Although La. C.Cr.P. Art. 729.3, imposing a continuing duty to disclose, does not specifically require disclosure in writing, it does require notification to the courtwhich the state does not claim to have done; and since this is a court of record, we are constrained to consider the case based on the record before us which does not reveal satisfaction of the continuing duty to disclose. We conclude, therefore, that the state failed to satisfy its continuing duty to disclose.
The trial judge did not rule on whether the state had adequately complied with discovery procedures, and apparently did not consider the sanctions for non-compliance provided in La. C.Cr.P. Art. 729.5, one of which, as requested by defendant, is prohibiting the party from introducing into evidence the subject matter not disclosed. The trial judge ultimately ruled that the statements were admissible as res gestae. Whether the statements are res gestae is irrelevant to whether the state complied with discovery. On the record before us we find that the trial judge erred by failing to impose some remedial sanction as provided for in La.C.Cr.P. Art. 729.5.
The failure of the state to comply with the discovery procedure, however, will not automatically command reversal. The defendant must show prejudice before the court will reverse his conviction. The court will review the record for a determination of whether any prejudice which may have resulted from the non-compliance caused the trier of fact to reach the wrong conclusion. State v. Sweeney, 443 So.2d 522 (La. 1983); State v. Ray, 423 So.2d 1116 (La. 1982).
The controversial statements are those made by defendant both before and after the crime to which Robert Lloyd testified. The most critical evidence against defendant is the eyewitness testimony of Wilbert Byes. The statements to which Robert Lloyd testified do not affect Byes's credibility or corroborate his account of the shooting. Although evidence of the statements increases the amount of evidence against defendant, we cannot say that any prejudice which resulted caused the trier of fact to reach the wrong conclusion.
Likewise as to the reports which defendant was provided prior to trial, we do not find that any prejudice which resulted caused the jury to reach the wrong conclusion.
Therefore, although the state violated discovery procedure and the trial judge appears to have erred in his rulings on defendant's objections concerning discovery non-compliance, we find that these errors do not warrant a reversal because on the record before us we are convinced that the jury reached the correct conclusion.

Assignment of Error No. 3
Defendant argues that the trial court erred by sustaining the state's objection *947 to defense counsel's questioning of Wilbert Byes concerning his military court-martial. Defendant contends that a court-martial should be considered the same as a conviction and available for impeachment. A court-martial does not necessarily involve a criminal prosecution, and being "court-martialled" does not mean being convicted of whatever violation was charged. To court-martial means to subject to trial; the term alone reveals neither the nature of the alleged violation nor the outcome of the proceedings, i.e., whether the accused was convicted.
Defense counsel asked Wilbert Byes whether he was "ever the subject of any court-martial proceedings?" Byes replied, "Yes, Sir." The state objected and after a bench conference the judge sustained the objection. Defense counsel asked no more questions on this issue.
From the record we know neither the nature nor the outcome of the court-martial. Since this genre of impeachment permits the use of criminal convictions only, without a proper predicate foundation bald reference to a court-martial is not proper. From the record before us we find that the trial judge did not err.

Assignment of Error No. 5
Defendant contends that the trial judge erred by ruling that N.O.P.D. criminalist, Officer David Waguespack is an expert in blood splatter analysis. Officer Waguespack testified that he analyzes evidence submitted to the laboratoryperforming microscopic tests, submitting his findings and testifying as an expert witness. He was then qualified as an expert witness in the identification of blood, hair and glass samples. He then testified to evidence concerning the knife used to slash the tire, and the hair and glass comparisons found on the scene, in the automobile and on the victim. The court sustained an objection that the witness not be allowed to testify to blood splatter analysis.
Later in the testimony, the State began to qualify Officer Waguespack as an expert for blood splattering. The witness testified that he has studied evidence of blood splattering during his sixteen years of work in the crime laboratory. He postulated that he has worked on perhaps twenty cases of blood splattering. Although he has not personally conducted any studies, he has aided other people in their studies. He has read literature on the subject. He has attended courses where blood splatter was discussed. He has never been qualified before as an expert in blood splatter analysis, but he has never been denied that status.
On cross, Waguespack testified that he has not written anything in the field, but has lectured on the subject. He said that he has a degree in biological science, but not physics. The court then qualified him as an expert.
The trial judge is vested with wide discretion in determining the competence of an expert witness under La. R.S. 15:466. Competence of an expert is a question of fact to be determined within the sound discretion of the trial judge. The trial judge's rulings on the qualification of expert witnesses will not be disturbed in the absence of manifest error. State v. Trosclair, 443 So.2d 1098 (La.1983).
Defendant argues that to be considered an expert in blood splatter analysis Officer Waguespack needs more and better qualifications. We do not find, however, that the trial judge's ruling that his qualifications were sufficient to allow him to testify as an expert was clearly wrong. We will not disturb that ruling, and therefore, we find no merit in this assignment of error.

Assignment of Error No. 6
Defendant complains that the trial court erred in refusing to give the accomplice instruction.
The trial judge is required to give requested jury charges which do not require qualification, limitation, or explanation and are not included in the general charge or another special charge, provided they are wholly correct and pertinent to the case. La. C.Cr.P. art. 807. This rule is a corollary of the trial court's obligation to charge the jury as to the applicable law in the *948 case. He is required to cover every phase of the case supported by the evidence whether or not he accepts it as true. La. C.Cr.P. art. 802; State v. Marse, 365 So.2d 1319 (La.1978).
The defendant argues that his defense to the crime was that Byes and Legania were his accomplices. This theory is contradicted by the record: the defendant's theory of the case was that he was with his girlfriend at the time of the crime. Thus, the accessory accusation was not part of the case. Nor was it supported by the evidence. All witnesses testified that Ancar killed his victim without help from the others.
The defendant also suggests that he wished to inform the jury of these men's arrest for the same crime. That information is not proper subject matter for jury charges.
Lastly, the "accomplice" instruction desired by the defendant is nothing more than an argument that those witnesses were biased or prejudiced, having a self-interest in the case. These attacks on the witnesses' credibility were adequately accomplished during cross-examination.
This assignment is without merit.

Assignment of Error No. 7
Defendant argues that the trial court unduly restricted the voir dire.
An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination. La. Const. Art. 1, Sec. 17 (1974).
The accused's right to intelligently exercise cause and peremptory challenges may not be curtailed by the exclusion of non-repetitious voir dire questions which reasonably explore the juror's potential prejudices, predispositions or misunderstandings relevant to the central issues of the particular case. State v. Monroe, 329 So.2d 193 (La.1976). On the other hand, a trial judge in a criminal case has the discretion to limit voir dire examination, as long as the limitation is not so restrictive as to deprive defense counsel of a reasonable opportunity to probe to determine a basis for challenge for cause and for the intelligent exercise of peremptory challenges. State v. Williams, 457 So.2d 610 (La.1984); State v. Duplessis, 457 So.2d 604, 606 (La. 1984). The trial judge's rulings will not be disturbed in the absence of a clear abuse of discretion. C.Cr.P. art. 786; State v. Perry, 420 So.2d 139 (La.1982); State v. Chevalier, 458 So.2d 507 (La.App. 4th Cir. 1984).
The defendant makes four specific allegations of impermissible limitation. First, he complains that he should have been allowed to rehabilitate a prospective juror. The juror testified that he knew the defendant and that knowledge would affect his ability to be fair and impartial.
The assistant district attorney stated, "I have no problem excusing the juror since he knows the defendant." Defense counsel then questioned the prospective juror, ultimately requesting that he be allowed to continue the questioning outside of the presence of the other prospective jurors. The trial judge denied this request and a bench conference ensued. Thereafter the court confirmed that the juror considered that his knowing defendant might affect his partiality, and then the court asked, "Anything further on the challenge for cause?" Defense counsel replied, "I'd submit it." Without objection from either side the court excused the juror. Defendant has made no showing that the action of the trial judge was in any way improper. Further, it is doubtful that any further questioning would have rehabilitated the juror, and surely had further questioning revealed that the juror held defendant in disrepute, defendant would have wanted him excused.
Defendant's second complaint concerns the trial judge's refusal to allow him to ask prospective jurors who had previously served on juries whether they agreed with the verdicts of those juries. Defendant may ask prospective jurors, "Have you ever served on a criminal jury before?", "What was the charge in that case?", "What was the verdict in that case?". See State v. Holmes, 347 So.2d 221 (La.1977). The trial judge permitted questions such as *949 those, but refused to permit "individual probing and/or questions by any attorney as to how any prospective juror voted in any previous case." A complete reading of State v. Holmes, supra, reveals the Supreme Court's position that there is no specific ground for prohibiting defendant from obtaining this information.
"Undoubtedly the defense is entitled to wide latitude in examining prospective jurors. This right is, however, to be exercised within the discretion of the trial judge who determines the scope of the examination under the prevailing facts and circumstances. La.Code Crim. Pro. art. 786. And when the question arises whether voir dire examination has been unduly restricted, the disallowance of a proper question is not autometically reversible. In evaluating the fairness of the ruling the entire examination must be considered. State v. Monroe, 329 So.2d 193 (La.1976); State v. Jones, 315 So.2d 650 ([La.] 1975).
State v. Vinet, 352 So.2d 684, 687 (La. 1977).
In State v. Holmes, supra, the court considered the possible unfairness if the State had prospective juror's prior jury-service voting records and the defense did not. In the record of this case there is nothing to suggest that the State had this information made unavailable to defendant. Even assuming the State did have this information, however, defendant has not shown that any prejudice resulted from the trial judge's restriction. See State v. Nicholas, 397 So.2d 1308, at 1316-1317 (La.1981). Defendant has not shown that his voir dire was so restricted as to prevent a fully meaningful and effective examination of prospective jurors and the intelligent exercise of his right of peremptory challenge. We find that any error was essentially harmless.
Defendant also complains that the court announced to the jury his exhaustion of his allotment of peremptory challenges. The judge was conversing with defense counsel, albeit in front of the jury, informing him that he had no more peremptory challenges and could henceforth challenge prospective jurors for cause only. Counsel made no objection to the comment, and on appeal defendant has made no showing of why this comment may have been improper. We find no error.
Defendant also argues that his challenge for cause should have been granted as to a prospective juror who was twenty-years retired from the New Orleans Police Department. Defendant contends that despite the prospective juror's unwavering assertion that he would be fair and impartial, his sixteen years as a police officer and present receipt of a pension "implies a bias in favor of police testimony and put him in a position of becoming an expert in police procedure with the other jurors." The record does not support this contention. We have closely scrutinized the voir dire of this prospective juror and have found nothing to indicate that the trial judge erred by denying the challenge for cause.
Further, we reviewed the entire voir dire and find that defendant was afforded full and fair examination of the prospective jurors.

DECREE
For the reasons provided, having found no basis in defendant's assigned errors to warrant reversal, and having found no errors in the pleadings and proceedings, La. C.Cr.P. Art. 920, we affirm defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] Defendant's assignment of error number 4 was neither briefed nor argued and is considered abandoned.