hWALTZER, Judge.

STATEMENT OF THE CASE:

By bill of information, defendant, Raymond Searles (Searles) was charged with the aggravated battery of Brian Howell. A six-member jury found him guilty as charged. A motion for new trial was denied. On the same day Searles was sentenced to three years at hard labor; the sentence was suspended and he was placed on three years active probation with the following conditions: (1) payment of $10 per month to the D.O.C.; (2) waiver of extradition; and (3) restitution to the victim of $6,800 for medical expenses and $8,000 for pain and suffering, together with payment of court costs of $167.50.

STATEMENT OF FACTS:

On the morning of September 19, 1991, Searles, the administrator of Black Collegiate Services, Inc. (BCS), got into a heated argument with Brian Howell, a BCS employee, about an unfinished job assignment. Searles *1331 fired Howell, who thereupon began to clean out his desk. Howell testified that he owned some of the computer programs being used by BCS, and attempted to remove those programs. Searles tried to keep Howell from doing so, and later left the room. In the meantime, two other BCS employees, Kuum-ba Kazi and Reginald Fells, tried to calm Howell and to convince him to leave.
Howell and Fells testified that Howell was on the telephone when Searles returned to the room. Kazi testified that he saw an opened pocketknife cupped in Searles’ right hand.[1] According to Howell alone, Searles walked into the room and stabbed Howell in _|jthe back. Howell testified that he did not realize he had been stabbed, and that in reaction to what he thought was a punch, he pushed Searles onto a desk. Howell said that Searles stabbed him in the hand and that he then realized he had been stabbed in the back.
According to Kazi and Fells, when Searles returned to the room, he and Howell began arguing again about the computer programs and that Howell began cursing Searles. Fells testified that he briefly turned to speak to Kazi, and when he turned back he saw Howell push Searles onto the desk. Kazi and Fells testified that they saw Searles stab Howell in the back while Howell held him down on the desk.

ERROR PATENT:

A review of the record reveals an error patent. The trial court sentenced defendant the same day that it denied his motion for new trial. LSA-C.Cr.P. art. 873 requires the trial court to delay imposition of defendant’s sentence for twenty-four hours after denial of a motion for new trial unless the defendant expressly waives the delay. There is no evidence in the record that defendant waived the delay; thus, it is an error patent.
Since Searles did not challenge his sentence on appeal and did not raise the failure to observe the delay as error, the error is harmless. State v. Collins, 584 So.2d 356, 359 (La.App. 4th Cir.1991).

VIOLATION OF DEFENDANT’S RIGHT TO FULL AND COMPLETE VOIR DIRE EXAMINATION OF PROSPECTIVE JURORS:

Defendant complains that the trial court erred in denying him the right to a full voir dire examination of prospective jurors. In support of his argument, defendant points to the trial judge’s refusal to allow examination of the jurors’ personal backgrounds because defense counsel had been provided with a master list giving the age, marital status, number of children, occupation, place of employment, and address of each of the prospective jurors. He also complains about the trial judge’s restricting examination of whether the jurors had been victims of a crime except for crimes of violence committed with a dangerous weapon, | «similar to the crime at issue in the case. Defendant further complains that the trial judge curtailed his voir dire of two jurors, John Rowland and" Marie Gibilant.
We find that the trial judge’s grudging attitude, displayed in this particular case against this defendant and his attorney, resulted in a curtailment of the voir dire examination so severe that, under these circumstances, it denied Searles his constitutional right to a full and free voir dire examination of prospective jurors.
A criminal defendant is entitled to a full and complete voir dire examination of prospective jurors and to challenge those jurors peremptorily. LSA-Const. Art. 1, § 17; LSA-C.Cr.P. art. 786. The purpose of voir dire examination is to determine the qualifications of prospective jurors by testing their competency and impartiality, and to discover grounds for challenges for cause and peremptory challenges. State v. Hall, 616 So.2d 664, 668 (La.1993); State v. Holmes, 619 So.2d 761, 762 (La.App. 4th Cir.1993). *1332 The defendant’s right may not be curtailed by the exclusion of non-repetitious voir dire questions which reasonably explore the jurors’ potential prejudices, predispositions, or misunderstandings relevant to the central issues of the case. State v. Ancar, 508 So.2d 943, 948 (La.App. 4th Cir.1987).
We recognize that the scope of voir dire is within the sound discretion of the trial judge, and his ruling will not be disturbed on appeal absent a clear abuse of discretion. State v. Hall, supra at 699. The trial court’s limitations constitute reversible error when, as here, they are so restrictive as to deprive defense counsel of a reasonable opportunity to probe to determine a basis for dismissal for cause or for peremptory challenge. State v. Ancar, supra at 948. In order to determine whether the trial judge afforded the defendant sufficiently wide latitude in examining prospective jurors, review of the trial judge’s rulings should be undertaken only on the record of the voir dire examination as a whole. State v. Hall, supra, at 699.
In State v. Hall, supra, the Supreme Court reversed the defendant’s conviction because of the trial judge’s limitations on voir dire regarding certain principles of law and capital punishment. The court stated that the trial judge displayed a “grudging attitude” toward the defense counsel’s questions.
|4Upon examination of the voir dire as a whole, it is clear that the trial judge erred by demonstrating such an egregiously grudging, intimidating and overbearing attitude, whose result was the impermissible limitation of defense counsel’s voir dire of prospective jurors. The Judge refused to allow counsel to ask questions that would elicit confirmation under oath and expansion of the personal information previously given to counsel in the form of a jury data sheet. Unlike the situation in State v. Jones, 596 So.2d 1360 (La.App. 1st Cir.1992), the trial judge did not conduct an exhaustive inquiry into the jurors’ qualifications and biases thus rendering defendant’s voir dire repetitious. Absent such questioning, the defendant was unable to ascertain whether the information on the master docket is current. Defendant had no opportunity to ascertain whether a particular juror still lived in Orleans Parish, maintained the same employment, or held the same marital status as set out in the master docket. Likewise, the intimidation practiced by the trial court, exemplifying the “grudging attitude” set forth in Hall, rendered defense counsel unable to elicit information concerning the particular job description and duties performed by the jurors, the significance of which was alluded to by defense counsel in the following colloquy:
MR. ELLOIE: Ms. Simpson, do you work for Freeport?
A JUROR: Yes:
THE COURT: Wait, Mr. Elloie you’ve got all your master docket there. We are not going into their occupations and all of that. We have given you all that information in advance.
MR. ELLOIE: You have given a sketch and I’m trying to ...
THE COURT [interrupting]: No, you’re not. That’s as far as you’re going is what you’ve got in the sketch.
MR. ELLOIE: She might work in the legal department of Freeport McMoRan, so, I’m getting to that.
THE COURT: She might work in the church, too.
MR. ELLOIE: But I can’t rush this man’s life. I understand you want to hurry but I can’t rush this man’s life and I’m not going to.
THE COURT: Mr. Elloie, sit down or you’re in contempt. Now, sit down and don’t move. You don’t tell me what I’m doing. Are you finished with your voir dire?
MR. ELLOIE: No, sir. I’m not even on the surface of my voir dire but if you order me to sit down, I’m going to sit down but, I mean, you’re telling me 11,-,can’t go deeper into any questions about the lives of these people who are going to judge my client, *1333 sitting here, I can’t do that. Now, I can sit down and be quiet.
THE COURT: Mr. Elloie, you’re not out there someplace making some preacher’s speech. You’re a lawyer, you’re in court. I told you, you’re not going beyond what’s in the master docket about these jurors unless it pertains to them being involved in some law enforcement or something like that. Now, finish your voir dire.
MR. ELLOIE: Now, other than assault, an assault kind of crime, have any of you been victims of any crimes?
THE COURT: No, I’m not going to permit that. It’s only the crime that we are talking about.
MR. ELLOIE: Your honor, I would like to offer an ongoing objection to ...
THE COURT [interrupting]: Continue with your voir dire.
MR. ELLOIE: ... your attempt to fi*us-trate my getting to the bottom of this. This is voir dire, to tell the truth ...
THE COURT [interrupting]: Mr. Elloie
MR. ELLOIE: ... and all I want is for these people to tell the truth. That’s all I’m asking, your honor.
THE COURT: Mr. Elloie, sit down.
MR. ELLOIE: And you keep frustrating me on every attempt.
THE COURT: Mr. Elloie, if I have to tell you one more time, you’re in contempt and we’re not going to try the case. Okay? I have ruled. Go ahead and finish your voir dire.
The foregoing example demonstrates the chilling effect of the trial court’s comments during voir dire. The repeated interruptions, coupled with threats of punishment for contempt, effectively disabled the defense counsel from conducting the full voir dire examination provided for by our Louisiana constitution, and demonstrated to counsel the futility of pursuing the voir dire examination that was his client’s right.
The trial judge continued to demonstrate his grudging attitude during defense counsel’s questioning concerning whether jurors or their families had been victims of violent crime, such as the crime of aggravated battery of which the defendant was accused. By limiting questions to violent crimes committed with a weapon, the trial court excluded such reasonable inquiry as, for example, whether the prospective jurors, their families or friends had been victims of simple robbery, burglary, simple kidnapping, simple assault, simple rape |6and simple battery. Such experiences, if elicited on voir dire, could then be explored by counsel for both parties in order to determine any bias with respect to law enforcement or investigative agencies, or any bias against persons accused of criminal conduct.
Our review of the complete transcript of the voir dire reveals that the trial judge’s acrimonious, grudging, intimidating attitude, expressed in his comments and rulings, caused the examination to be, in fact, no voir dire at all, as that term is understood in our Louisiana Constitution. In this State, “[t]he accused shall have a right to full voir dire examination of prospective jurors.... ” LSA-Const. Art. I, § 17. The transcript reveals not only the trial judge’s reluctance to allow constitutionally adequate examination, but also an open hostility to the defendant’s counsel. The following comments by the trial court directed to counsel for the defendant prior to the taking of testimony are illustrative:
“Wait, Mr. Elloie. Let’s you and I start, right now. I run this court.”
“Mr. Elloie, I don’t want anymore interruptions of me. I don’t discuss things with you, I don’t answer questions and I don’t argue with lawyers.”
“Mr. Elloie, I ruled — Don’t tell me what I know and I what I don’t know. Now, move on.”
“Mr. Elloie, sit down or you’re in contempt. Now, sit down and don’t move. You don’t tell me what I’m doing.”
“Mr. Elloie, you’re not out there someplace making some preacher’s speech. You’re a lawyer, you are in court.”
*1334 “Mr. Elloie, if I have to tell you one more time, you’re in contempt and we’re not going to try the case. Okay?”
“No. I told you, only crimes of this nature, Mr. Elloie. That is the way I run this court and I don’t want any response.”
“Mr. Elloie, you better shut up. I told you to ask all of them. If any of them says an answer that’s different, okay, you can pursue them. That’s the way I do it in here. You ask them all at one time.”
This hostility is not evident in the judge’s colloquies with the prosecutor. The evidence in the record of judicial bias and of the “grudging attitude” noted in the Hall case requires a reversal of Searles’ conviction.
Because the inadequacy of the defendant’s opportunity to conduct a full and complete voir dire examination of prospective jurors under the particular facts of this case requires |7reversal of Searles’ conviction and sentence, we do not address his remaining assignments of error.

REVERSED AND REMANDED.

SCHOTT, C.J., dissents.

. Searles denied Kazi's testimony that Searles held an open knife in his hand when he returned to the room. Searles testified that the knife was in his pocket.