| iBYRNES, Judge,
dissenting with reasons.
I respectfully dissent. The defendant killed Anthony Brazley. Defendant’s trial counsel apparently adopted a trial strategy that could best be characterized as “damage control” in the sénse that a manslaughter verdict was the best that could be hoped for under the circumstances.[1] (The defendant did not take the stand and called no witnesses.) Faced with a record of the trial having been conducted pursuant to this strategy, defendant’s appellate counsel presents *94 only one assignment of error which is argued in brief as follows:
Essentially what occurred in this case is that a confession ruled inadmissible was put before the jury. This was not a confession in the sense that the defendant denied any involvement — he did not. [Emphasis added.] This was, however, a confession which negated the element of sudden provocation necessary for manslaughter.
‡ ‡ ‡ ‡
In the case at bar, there is much evidence that the ^defendant was in love with Michelle Guy. There is evidence that he might become enraged at seeing evidence (the van) that the victim was spending the night with Michelle Guy. (Tr. at 88.) There is evidence that the defendant was very angry that night when he burst into the house, even punching the woman he loved. (Tr. at 91.) All that evidence, which points towards manslaughter, was countered illegally when the prosecution mentioned the defendant’s statement, “I’ve been waiting for a long time to do this.” No other evidence does as much damage to the defendant’s theory of the case. [Emphasis original.] The Bruton [v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968),] recognition of the inability of a simple admonition to cure such an error is particularly apt here. Without this statement being placed before the jury, manslaughter may well have been the verdict; certainly this Court cannot say that the error was harmless beyond a reasonable doubt.
At trial, during the State’s opening argument, the prosecutor stated:
At this time, Keith Brazley had pulled up into the front of the house and got out of his car, and when he got out of his car, he looked at Greg and he said, “I’ve been waiting to do this.” And he repeated it. “I’ve been waiting to do this.”
At the conclusion of the opening statement, out of the jury’s presence, defense counsel moved for a mistrial, noting the State had not provided notice of its intent to introduce this statement or even notice that the appellant had made the statement. The prosecutor argued that because the statement was res gestae, he was not required to give notice of the State’s intent to use the statement. The court, upon learning the statement was given after the defendant had left the scene and had returned, found the statement not to be res gestae. The court denied the motion for mistrial, but it deemed the statement to be inadmissible pursuant to La.C.Cr.P. art. 729.5. The State sought an emergency writ from this ruling, but this court denied writs, declining to exercise its supervisory jurisdiction. State v. Brazley, 96-0556 (La.App. 4th Cir. 3/12/96), unpub.
La.C.Cr.P. art. 768 provides that prior to its opening statement the State must give written notice of its intent to introduce a confession or inculpatory statement, unless the defendant has been given pretrial discovery. As noted above, the only possible reference to this statement was the State’s answer to the bill of particulars, which merely noted any res gestae statements.
Whether or not the statement can be considered to be res gestae is not controlling in determining if the State had the duty to inform the defendant of its existence. In State v. Ancar, 508 So.2d 943, 946 (La.App. 4th Cir.1987), this court stated: ‘Whether the statements are res gestae is irrelevant to whether the state complied with discovery. On the record before us we find that the trial judge erred by failing to impose some remedial sanction as provided for in La.C.Cr.P. Art. 729.5.” (Emphasis supplied.)
In State v. Harris, 96-0951 p. 6 (La.App. 4th Cir. 3/5/97), 690 So.2d 999, 1003, this court stated: “In order for an error to be harmless, it must be shown beyond a reasonable doubt that the complained-of error did not contribute to the verdict. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The guilty verdict actually rendered in the trial must be unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).” In State v. Page, 95-2401 pp. 17-18 (La.App. 4th Cir. 8/21/96), 680 So.2d 700, *95 712[2], this court stated:
Generally, where a defendant has been lulled into a misapprehension of the strength of the state’s case by the failure to fully disclose, such a prejudice may constitute reversible error. State v. Strickland, 398 So.2d 1062, 1067 (La.1981). However, the failure of the State to comply with the discovery procedure will not ^automatically result in reversal. Rather, the Appellate [sic] court must review the record for a determination of whether any prejudice may have resulted from the noncompliance causing the trier of fact to reach the wrong conclusion. State v. Ray, 423 So.2d 1116, 1118-1119 (La.1982).
In State v. Collins, 584 So.2d 356 (La.App. 4th Cir.1991), the State disclosed, just prior to opening statement, the existence of a statement the defendant made at booking concerning his address (he was charged with possession of twenty-eight to 200 grams of cocaine found at the residence where he allegedly lived). However, it failed to mention the statement in its answers to the bill of particulars or at any time in response to the defendant’s motion to suppress the confession. In addition, counsel (who was present at booking) insisted this question was not asked at that time. Although counsel objected at the time the notice was filed, he failed to do so when evidence of the statement was actually introduced. In addition, the trial court never actually ruled on the defendant’s objection when it was made, but rather merely let the evidence be introduced. On review, this court found the trial court erred by not imposing a sanction pursuant to La.C.Cr.P. art. 729.5. However, it also found this evidence was merely cumulative to other evidence introduced which showed the defendant’s address. Therefore, the introduction of this evidence did not contribute the verdict, and thus the error in introducing it was harmless.
Likewise, in State v. Ancar, 508 So.2d 943 (La.App. 4th Cir.1987),. the State’s failure to disclose the existence of a statement made by the defendant was found to be harmless error. Although in its answer to the bill of particulars the State noted no statements were made by the defendant, just prior to opening statement the State filed a notice of its intent to introduce statements made by the Isdefendant. The State responded it did not know of the statements at the time the answers were prepared, but it orally advised the prior defense counsel of their existence. However, there was nothing in the record to corroborate this claim. The trial court did not rule on the noncompliance issue, but rather found the statements to be admissible because they were res gestae. On review, as noted above, this court found the res gestae nature of the statements to be irrelevant to the issue before the court, that being the noncompliance with the discovery provisions. This court further found the trial court erred by failing to impose any art. 729.5 sanctions, but it ultimately found this error was harmless because the statements did not contribute to the verdict.
Here, the defendant argues the prosecutor’s reference to the statement concerning the defendant “waiting to do this” cannot be deemed to have been harmless because it effectively negated his only reasonable defense, that being that the killing was perpetrated in the heat of passion. Thus the defendant argues' that the killing was really a manslaughter in that he became enraged upon finding the victim’s van parked outside Ms. Guy’s apartment. He insists he charged into the apartment, knocked down Ms. Guy when she opened the door, armed himself inside the apartment, and then stabbed the victim in a jealous rage.
However, the jury must have noted that the defendant did not find the victim and Ms. Guy embracing or in bed together. He did not even see them together. When Ms. Guy answered the door, the victim was in another room. The fact that he punched Ms. Guy, and went, to the kitchen to get a knife, provides evidence that the defendant had reflected on the act he was to commit; evidence that, although the defendant did not come armed, he had decided to arm himself before 1 6he entered the premises. It was not a spontaneous act in which the defendant picked up the first thing at hand that could *96 serve as a weapon. The choice was deliberate. Then the defendant sought out the victim in another room to kill him. The jury could have concluded beyond a reasonable doubt that the defendant had formed the intention of killing the victim prior to entering Ms. Guy’s residence — an intention growing out of a long standing animosity rather than a sudden isolated explosion of passion. The defendant’s reaction was not that of a man who walks in to find his wife or girl friend unexpectedly in the arms of another man. The defendant’s actions were those of a man acting on a pre-existing hatred, a non-spontaneous hostility, a pre-determined decision to kill Anthony Brazley if he ever found him in Ms. Guy’s residence. This decision was made well in advance of the event, and the defendant was apparently prepared to act on that decision regardless of whether the defendant found the victim and Ms. Guy in a compromising situation when he entered the premises.
Although the record does not contain the transcript of the closing arguments, it contains the opening statements, and in the defense’s opening statement counsel meticulously set forth the circumstances behind the killing, which included the stormy history of Ms. Guy and the defendant, and Ms. Guy’s dalliance with the victim. In addition, defense counsel cross-examined Ms. Guy in great detail concerning her relationships with the victim and the defendant. Ms. Guy admitted she told the victim to move his van because she feared the defendant’s reaction if he saw the van parked outside her apartment, and she also admitted she had allowed the defendant to spend the previous night with her, even though she had earlier thrown him out of the apartment. The jury was aware the defendant did frnot arm himself until he had entered the apartment. The jury was also informed, without any defense objection, that the defendant had threatened Ms. Guy in the past concerning the victim staying with her.
Given these circumstances, the error is harmless. The jury was aware of the defendant’s prior knowledge of Ms. Guy’s relationship with the victim and of his prior threats about this relationship. There is sufficient other evidence of the defendant’s knowledge of the prior relationship of Ms. Guy and the victim and the prior threats made by the defendant to establish beyond a reasonable doubt the guilt of the defendant of second degree murder, regardless of the reference made by the prosecutor to the defendant’s alleged inculpatory statement. The inadmissible statement can be seen, therefore, to be cumulative. Cf. State v. Adams, 609 So.2d 894 (La.App. 4 Cir.1992). In other words, we find that the statement did not contribute to the verdict. Thus, the prosecutor’s reference to this statement, though error, was harmless.
The cases cited by the defendant do not indicate a contrary conclusion. The defendant argued that admonitions to disregard powerful evidence such as confessions are often meaningless, citing Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). But that is not what Bruton stands for. In Bruton a eodefend-ant’s confession was admitted with instructions to the jury that its admissibility was limited to the codefendant and could not be considered against the defendant. But the codefendant did not take the stand, thereby depriving the defendant of the right of cross-examination to remediate the effects of the confession on the minds of the jury, instructions to disregard the confession to the contrary notwithstanding. Bruton turned on the question of the deprivation of the ^defendant’s constitutional right of cross-examination under the Sixth Amendment which the court held could not be cured by instructions to the jury. Additionally, the court noted that when the codefendant’s confession was admitted against the said codefendant, the confession was thereby properly placed before the jury in its deliberations, making it that much more likely that the jury would be subconsciously unable to exclude consideration of the codefendant’s confession while simultaneously deciding the question of the defendant’s guilt. In the instant case the “confession” was ruled inadmissible for all purposes, unlike the Bruton case, and could have no place in the deliberations of the jury.
• Moreover, implicit in Bruton is also a certain discomfiture experienced by the Su *97 preme Court when the confession of the co-defendant which may have led to Burton’s conviction, was later thrown out as to the codefendant and the eodefendant’s conviction overturned by the appellate court, but which inadmissibility was found to have been cured as to Bruton by the trial court’s instruction to the jury. Thus the issues of fact and law in Bruton are so far removed from the instant case as to render Bruton of no value to the defendant in these proceedings.
The Bruton court, in commenting on the fact that instances occur in almost every trial where inadmissible evidence creeps in, noted that: “A defendant is entitled to a fair trial but not a perfect one.” Id., 391 U.S. at p. 135, 88 S.Ct. at 1627; Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). We also note that in Delaware v. Van Arsdall the court applied a harmless error analysis even to the confrontation clause of the Sixth Amendment, language in the earlier Bruton ease to the contrary notwithstanding.
In Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), a case decided much more recently than Bruton the Court held that the introduction of a confession is subject to a harmless error review, i.e., it does not automatically constitute reversible error.[3] Fulminante has been followed by the Louisiana Supreme Court. State v. Tart, 93-0772 (La.2/9/96); 672 So.2d 116, cert. den., Tart v. Louisiana, 96-5549 (10/15/96); — U.S. -, 117 S.Ct. 310, 136 L.Ed.2d 227. In analyzing the effect of the statement or confession “we look to its importance in light of other evidence.” State v. Houghton, 619 So.2d 765, 770 (La.App. 4 Cir.1993).
In the instant case, the prosecution was never allowed to place the confession into evidence. It is reasonable to conclude that an objectionable confession alluded to briefly in opening statement has much less of an impact on the jury than confessions improperly admitted into evidence. This sanction imposed by the trial court pursuant to La. C.Cr.P. art 729.5 was sufficient. Cases on this issue finding harmless error have done so in instances where the inadmissible statement was actually admitted into evidence where it could be presumed to have an even greater impact on the jury because the jury is charged to consider all properly admitted evidence in reaching its verdict. Further reducing the presumed impact on the jury |10is the timing of the statement complained of, at the beginning of the trial when it would be least fresh in the minds of the jury when they went into the jury room to deliberate.
For the foregoing reasons I would affirm the conviction and sentence, and, therefore, dissent.

. Defendant's trial counsel said in opening statement:
And to be honest with you, I don’t have that total confidence to come and say with some bombast to you that you will certainly come back with a not guilty. I don’t have that feeling. I do have the feeling that this will not be more than a manslaughter.

. Writ den., 96-2352 (La.2/21/97), 688 So.2d 522.

. In Arizona v. Fulminante there was a question as to whether the confession was voluntary or involuntary. The defendant in the instant case does not contend that the inculpatory statement was involuntary.