TERRI F. LOVE, Judge.
11This appeal arises from the defendant’s convictions for possession in violation of La. R.S. 40:969(C). Following a multiple bill hearing, the trial court found the defendant a three-time multiple offender. The trial court vacated his original sentence of five years and was sentenced to eight years at hard labor without the benefit of probation, parole, or suspension of sentence. In his appeal, the defendant alleges the trial court abused its discretion in limiting questioning of prospective jurors during voir dire regarding their views on police testimony. The defendant also alleges the' State’s evidence submitted at the multiple bill hearing was insufficient to find him as a three-time multiple offender. We find that the trial court did not abuse its discretion in limiting the questioning of potential jurors as the record indicates that defense counsel was able to question extensively about the veracity of police testimony. Furthermore, we find that the evidence of the defendant’s 1996 conviction for cocaine possession was sufficient and the defendant failed to demonstrate with any affirmative evidence that the 1996 guilty plea was not knowingly and voluntarily made. Therefore, we affirm the convictions and remand the present matter for resentencing in accordance with this opinion.
| ^PROCEDURAL HISTORY
The State of Louisiana charged Thomas Henry (“Mr. Henry”) with one count of possession with intent to distribute eariso-prodol (“Soma”) and one count of possession with intent to distribute alprazolam (“Xanax”), both violations of La. R.S. 40:969(A)(1). At trial, a twelve-member jury returned responsive verdicts of possession in both counts in violation of La. R.S. 40:969(C). Subsequently, the State filed a multiple bill charging Mr. Henry as a triple offender, pursuant to La. R.S. 15:529.1. The trial court originally sentenced Mr. Henry to five years, which was immediately vacated following the trial court’s finding of Mr. Henry as a triple offender. Accordingly, Mr. Henry was *1110 sentenced to eight years at hard labor without the benefit of probation, parole, or suspension of sentence. Mr. Henry’s appeal follows.

FACTUAL BACKGROUND

The, facts from the instant case arise from an incident involving Mr. Henry and Narcotics Detectives Joseph Jefferson, Marc Vasquez, Ronald Bouet, and Travis Ward, who were working in plain clothes in the French Quarter around Bourbon Street. The following testimony and facts were contested and contradicted at trial.

Mr. Henry’s Testimony

At trial, Mr. Henry testified. He stated that prior to the incident, while working in the French Market, he was giving a tourist directions when Detective Vasquez and “a couple more guys.... [t]hrew [him] against the wall ... and told [him] that [he] fit the description of a suspect.” Mr. Henry testified that he was searched, and the detective ran his name, but nothing was discovered. ^Subsequently, Mr. Henry recalled Detective Vasquez saying that he did not want to see Mr. Henry on Bourbon Street ever again.
In his testimony, Mr. Henry denied dealing drugs. Mr. Henry stated that on the night of his arrest, he was scared to go on Bourbon Street because of Detective Vasquez’s warning.
Mr. Henry admitted that when Detectives Vasquez and Jefferson approached him, he was holding his girlfriend Tara Forest’s (“Ms. Forest”) Chanel purse. He also stated that Detective Vasquez said, “I thought I told you I didn’t want to see you out here again,” to which he replied, “it is a free country. I can go wherever I want.” Detective Vasquez responded, “Well, you know something, I told you I didn’t want to see you no more.” At that point, Detective Vasquez noticed the purse and snatched it from Mr. Henry. Mr. Henry protested that the purse was his girlfriend’s, but was quickly taken to the police station. He also testified that the police took the bag and his money from him. Mr. Henry said that he had $400 when he was arrested, but signed a receipt for only $229 because one of the arresting officers told him part of the money would be placed in' evidence. On cross-examination, Mr. Henry admitted having possession of Ms. Forest’s purse containing her prescription drugs when he was arrested.

Tara Forest’s Testimony

At trial, Ms. Forest testified that she worked both a day and evening shift the day Mr. Henry was arrested. She left her purse at home because a purse had been stolen from her work place the day before. When Mr. Henry picked Ms. Forest up from her second shift, he brought her purse with him, and they went to a casino. According to Ms. Forest, she won $400 and Mr. Henry won $600 that night. After they left the casino, Ms. Forest and Mr. Henry walked to Bourbon Street, went to a|4club, and ended up at a daiquiri shop so Ms. Forest could use the restroom. Mr. Henry stood outside, while Ms. Forest went to the restroom. Ms. Forest recalled taking her wallet out to purchase a drink and giving Mr. Henry her purse while she used the restroom. She also stated that when she returned from the restroom, Mr. Henry was gone.
After hours of searching for Mr. Henry, Ms. Forest called local hospitals and finally Central Lockup, where she found Mr. Henry. Subsequently, Ms. Forest picked up her purse from Central Lockup, but her medications were gone.
Ms. Forest testified that she keeps Soma, Combivent, Xanax, Lyrica, Topa-max, tramadol and promethazine in her purse.[1] She takes Soma as a muscle relax *1111 ant for a hip and thigh injury she suffered in 2000. Combivent is an inhaler for asthma. She takes Xanax for anxiety. She testified she takes Lyrica for neuropathy, specifically for a nerve condition in her legs and feet. She takes Topamax for epilepsy and the tramadol for migraines. The promethazine is for cold, sinus symptoms and cold-induced asthma. She also takes Cipro for sinus, and Advair for asthma. Ms. Forest also testified that as long as she had known Mr. Henry, she knew of no drug related activities.

Detective Vasquez’s Testimony

Detective Vasquez testified at trial that he was on Conti Street, near the intersection of Bourbon Street, when Mr. Henry walked by, stopped and said, “I got what you white boys like.” Detective Vasquez replied by asking what Mr. | ¡¡Henry had. Mr. Henry informed Detective Vasquez that he had “coke[2], Xanax, an Somas.” Detective Vasquez recalled Mr. Henry said it would cost $100 for a bag of coke and retrieved a bag of pills from his right pocket. At that point, Detective Vasquez signaled to the other detectives that contact and an offer to purchase drugs was made. When Detective Vasquez stepped into a doorway under a hotel overhang with Mr. Henry, the other detectives converged on Mr. Henry and Detective Vasquez. Mr. Henry was placed under arrest and advised of his rights.

Detective Jefferson’s Testimony

Mr. Henry was taken to the police station where Detective Jefferson asked Mr. Henry if he had anything else on his person that he needed to know about. Detective Jefferson testified that Mr. Henry then produced two bags of crushed Lyrica that he kept in his posterior. Additionally, as a result of the search incident to arrest, $229, twelve Somas, and thirteen Xanax were found on Mr. Henry. Both Detectives Jefferson and Vasquez denied knowing or seeing Mr. Henry before this incident.

ERRORS PATENT

A review of the record reveals two errors patent. First, when the trial court issued its original sentence, it failed to specify a sentence for each count of possession in violation of La. R.S. 40:969(C). The trial court issued only one sentence when Mr. Henry was convicted of two counts of possession. Second, the trial court issued a sentence without the benefit of probation, parole or suspension of sentence pursuant to Mr. Henry’s status as a multiple offender. Notably, the trial court failed to indicate which count the multiple offender sentence was based. Further, La. R.S. 15:529.1(G) mandates that multiple offender sentences “shall be |fiat hard labor without benefit of probation or suspension of sentence.” The statute does not prohibit parole. Pursuant to La. C.Cr.P. art 882(A), “an illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review.” We vacate Mr. Henry’s sentence and remand to the trial court for resentencing in accordance with this opinion.

VOIR DIRE CHALLENGE

■ Mr. Henry asserts that he was not afforded his constitutional right to examine potential jurors during voir dire due to the trial court’s curtailment of defense counsel’s questions. He contends that the trial court prevented him from questioning potential jurors about their “attitudes on -the testimony of police officers as eyewitnesses.”
*1112 The Louisiana Supreme Court in State v. Holmes, 2006-2988, p. 55 (La.12/2/08), 5 So.3d 42, 79-80, set forth the standard of review for claims that voir dire was unlawfully limited:
La. Const, art. I, § 17 guarantees a defendant full voir dire examination of prospective jurors and the right to challenge jurors peremptorily. The purpose of voir dire is to determine qualifications of prospective jurors by testing their competency and impartiality in order to discover bases for challenges for cause and for the intelligent exercise of peremptory challenges. State v. Hall, 616 So.2d 664, 668 (La.1993). Nonetheless, the scope of examination rests within the sound discretion of the trial court, and its ruling will not be disturbed absent clear abuse. La.Code Crim. Proc. art. 786; Hall, 616 So.2d at 669. In determining whether the trial court afforded a sufficiently wide latitude to the defendant, the entire voir dire examination must be considered.
Mr. Henry alleges that the trial court erred in sustaining two of the State’s objections to the defense’s questioning of prospective jurors regarding police testimony. First, Mr. Henry points to the trial court’s sustaining of the State’s objection during the first panel of prospective jurors wherein defense counsel |7asked whether they could think of any reasons why a police officer might lie. The State objected and an off-the-record bench conference was . held. Thereafter, defense counsel changed the subject to police officers as professional witnesses and asked the panel members to rate the New Orleans Police Department based on their opinion of the department’s overall performance. Mr. Henry’s defense counsel did not return to the topic of police officers lying.
Secondly, the State asked the second voir dire panel members if they could render a verdict on police testimony alone. One panel member responded that she did not trust the police “because [she knew] too many people who [were] wrongfully prosecuted.” When defense counsel conducted voir dire of the second voir dire panel, she returned to the panel member who previously expressed concerns of police officer credibility. Defense counsel asked the panel member whether police officers “played a part” in the wrongful prosecution of people she knew. The State then objected and an off-the-record bench conference was held.
Additionally, a third objection occurred during the second round of voir dire when Mr; Henry’s defense counsel referenced the widely publicized “Danziger Bridge case” noting:
Now, I think, you know, we have all seen cases, like, I think, right now the Dan-ziger Bridge case is actually in session. So we have heard kind of about big cases, right, where maybe somebody is killed or whatever and the officers may not tell the truth in cases like that.
This Court has previously found that a trial court may not curtail the defendant’s right to ask non-repetitious voir dire questions that “reasonably explore the juror’s potential prejudices, predispositions or misunderstandings relevant to the central issues of the particular case.” State v. Anear, 508 So.2d 943, 948 (La.App. 4 Cir. 6/3/1987). This Court also noted that, a trial court may | Jimit voir dire “as long as the limitation is not so restrictive as to deprive defense counsel of a reasonable opportunity to probe to determine a basis for challenge for cause and for the intelligent exercise of a peremptory challenges.” Id.
Mr. Henry asserts that his case is analogous to State v. Dyer, 95-2368, p. 4 (La.App. 1 Cir. 10/2/96), 682 So.2d 278, 280, wherein the trial court committed reversible error by prohibiting any inquiry *1113 into the relations between prospective jurors and police officers. We find Mr. Henry’s case to be distinguishable. In the instant matter, Mr. Henry had the opportunity to question and did question potential jurors about the veracity of police testimony.
During the first voir dire panel, defense counsel noted that some panel members expressed they would hold police officérs to a higher standard in response to the prosecutor’s questions regarding the credibility of police witnesses. She then asked whether any panel members believed police officers were more likely to tell the truth than others and whether previous hypothetical showing why. others might lie also applied to police officers. After the State’s objection to whether the panel could think of more reasons why police officers would lie, defense counsel asked whether panel members would evaluate the testimony of professional witnesses, such as police officers, differently from lay witness testimony. She also asked panel members to rate the New Orleans Police Department on a scale of one to ten.
After the objection to defense counsel’s reference to the Danziger Bridge case was sustained, defense counsel asked the panel if police officers were more or less likely to tell the truth in “run of the mill” cases, as opposed to “large[r]” cases. In addition to the previously mentioned questions, many of the questions were oriented to witness credibility. Under these circumstances, it is apparent that the |9trial court allowed extensive questions dealing with the credibility of police officers throughout voir dire. Therefore, Mr. Henry’s case is distinguishable from the situation in Dyer.
Moreover, we find the sustained objections were properly made. The objection to defense counsel’s question about other instances where police officer might lie was proper because it asked the panel members for speculation, and it was cumulative. See Ancar, 508 So.2d 943 at 948 (The trial court may prohibit repetitive questions); See also Dyer, 95-2368 at p. 4, 682 So.2d at 280 (The trial court may prohibit hypothetical questions which call for prejudgment of the supposed facts). Likewise, the objection to the question concerning the Danziger Bridge case and other cases concerning police improprieties was properly sustained. See State v. Scott, 307 So.2d 291 (La.1/20/1975) (prohibiting questioning aimed at determining potential racial bias was proper because the question was irrelevant, inflammatory, and misleading). Finally, defense counsel’s attempt to question a potential juror about her previously mentioned bias against police officers was also properly prohibited, as it was aimed at eliciting irrelevant and inflammatory material. Accordingly, we find that the trial court did not abuse its discretion.

TRIPLE OFFENDER CHALLENGE

Mr. Henry asserts that the evidence of one of his previous convictions was insufficient to sustain his conviction as a three-time felony offender. He contends that the evidence of his 1996 conviction for cocaine possession, case no. 386-815, was insufficient because the State did not introduce a perfect transcript of the plea colloquy.
La. R.S. 15:529.1(D)(l)(b) provides:
| inExcept as. otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment .shall be sufficient to meet the original burden of proof. If the person claims that any conviction alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction alleged in the *1114 information was obtained in violation of the constitutions of Louisiana or of the United States shall set forth .his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
The Louisiana Supreme Court established the following analysis to determine whether the State has sufficiently proven prior guilty pleas in multiple offender proceedings:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a “perfect” transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a “perfect” transcript, for example, a guilty plea form, a ■ minute entry, an “imperfect” transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant’s prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boy-kin rights. We note that this new procedure will not only give appropriate significance to the presumption of regularity which attaches to judgments of conviction which have become final, but will also provide an advantage to defendants who were previously under Lewis unable to introduce any extra-record evidence and whose guilty pleas were heretofore under Tucker found constitutionally valid by mere proof of a minute entry and a guilty plea form.
State v. Shelton, 621 So.2d 769, 779-80 (La.7/1/1998).
InThus, Mr. Henry had the burden of providing some affirmative evidence. A “[djefendant can attempt to meet his burden of production with a transcript, with testimony regarding the taking of the plea, or with other affirmative evidence.” Id. 621 So.2d at 775 footnote 24.
Additionally, in State v. Weaver, 99-2177, p. 13 (La.App. 4 Cir. 12/6/00) 775 So.2d 613, 621, this Court held that a minute entry or a docket master showing the defendant was represented by counsel at the time he pled guilty, along with a properly executed waiver of rights/guilty plea form is sufficient for the State to meet its burden of proof under La. R.S. 15:529.1, In doing so, this Court noted that a colloquy between the trial court and a defendant is preferable, but not indispensable for the State to carry its burden of proof where the record contains other evidence of proper waiver. Id.
At the multiple offender hearing, the State introduced a copy of the bill of information, a Waiver of Constitutional Rights form and a copy of the docket master showing Mr. Henry was represented by counsel when he pled guilty as charged to possession of crack cocaine on December 18, 1996. A copy of the Decern- *1115 ber 18, 1996 minute entry indicated that Mr. Henry was represented by counsel and informed of the rights he was waiving. Officer Jay Jaquet, a finger prints expert for the New Orleans Police Department, matched Mr. Henry’s finger prints to those on the back of the bill of information and the arrest register of the 1996 conviction. In addition, the trial court noted when it determined Mr. Henry was a three-time multiple offender, Mr. Henry admitted during his trial testimony to the 1996 conviction.
The totality of this evidence demonstrates that the State met its initial burden of showing the existence of the 1996 guilty plea and that Mr. Henry was [ ^represented at the time of his plea. Therefore, under Shelton, the burden shifted to Mr. Henry. Mr. Henry points to the fact that no signature on the waiver of rights form is legible. However, he fails to point to any affirmative evidence, such as a transcript, or his own testimony, to negate that the plea was knowingly and voluntarily made. Accordingly, he fails to make any showing that an infringement of his rights or a procedural irregularity occurred in the taking of the 1996 plea. Furthermore, Mr. Henry admitted to the 1996 conviction during trial. Therefore, we find that Mr. Henry’s assertion has no merit.

DECREE

For the above-mentioned reasons, we find that the trial court did not abuse it discretion in limiting voir dire. Mr. Henry’s defense counsel was given a full opportunity to question prospective jurors about police officer credibility, and the limitations imposed by the trial court served to avoid unnecessary prejudice and repetitive questioning. We also find that the evidence presented at the multiple bill hearing is sufficient to establish that Mr. Henry knowingly and voluntarily pled to possession of cocaine in 1996, and consequently, his adjudication as a triple offender is affirmed. Therefore, we affirm Mr. Henry’s conviction in the instant case and remand the matter to the trial court for resentencing in accordance with this opinion.
AFFIRMED AND REMANDED FOR RESENTENCING.

. Throughout this opinion, brand name prescription drugs are capitalized and generic *1111 prescription drugs are not.

. The term “coke” used in this opinion refers to cocaine.